## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOMINICK COGNATA individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE & CO., JOHN EDMONDS, and JOHN DOE Nos. 1-10,<br><br>Defendants. | Case No. _____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dominick Cognata ("Plaintiff") complains upon knowledge as to himself and his own actions and upon information and belief as to all other matters against Defendants JPMorgan Chase & Co., John Edmonds, and John Doe Nos. 1-10 (collectively, "Defendants") as follows:

### SUMMARY OF ALLEGATIONS

1.    This action arises from Defendants' unlawful and intentional manipulation of gold, silver, platinum, and palladium futures contracts (collectively, "precious metals futures contracts") and options on such contracts traded on the New York Mercantile Exchange ("NYMEX") and the Commodity Exchange, Inc. ("COMEX") from approximately January 1, 2009 through December 31, 2015 (the "Class Period") in violation of the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.* (the "CEA") and the common law.

2.    Defendants are a group of precious metals traders and the bank that employs them. On October 9, 2018, Defendant Edmonds pled guilty in the District of Connecticut to one count of conspiracy to defraud the market and manipulate the prices of NYMEX and COMEX precious metals futures contracts and one count of commodities fraud.[1]

---

[1] *U.S. v. Edmonds*, No. 18 CR 239, ECF Nos. 7-8 (D. Conn. Oct. 9, 2018).

3.      Defendants manipulated the prices of NYMEX and COMEX precious metals futures and options contracts during the Class Period using a technique called "spoofing" whereby Defendants routinely placed electronic orders to buy and sell such futures contracts with the intent to cancel those orders before execution ("spoof orders").  Such spoof orders injected materially false and illegitimate signals of supply and demand into the market and were intended to induce other market participants to trade against Defendants' genuine orders (*i.e.*, orders that Defendants did want to execute) on the opposite side of the market from the spoof orders at prices, quantities, and times at which Plaintiff and the other market participants otherwise would not have traded.

4.      Accordingly, the spoof orders were designed to, and did, artificially move the prices of NYMEX and COMEX precious metals futures and options contracts during the Class Period in a direction that was favorable to Defendants but unfavorable to Plaintiff.

5.      Given the concealed and secretive nature of Defendants' manipulation, more evidence supporting the allegations in this Complaint will be uncovered after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337(a), and Section 22 of the CEA, 7 U.S.C. § 25. This Court also has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

7.      Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391 (b), (c), and (d) and Section 22 of the CEA, 7 U.S.C. § 25(c). One or more of the Defendants resided, transacted business, were found, or had agents in the District.

8.      Defendants, directly and indirectly, made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails in connection with the unlawful acts and practices and course of business alleged herein.

**PARTIES**

**A.      Plaintiff**

9.      Plaintiff Dominick Cognata is a resident of New York.  Plaintiff transacted in COMEX silver and gold futures and options contracts during the Class Period at artificial prices proximately caused by Defendants' unlawful manipulation as alleged herein.  Defendants deployed the spoofing scheme alleged herein hundreds of times throughout the Class Period, depriving Plaintiff and the Class of the ability to transact in a lawful, unmanipulated market.

10.     Plaintiff Cognata suffered economic injury, including monetary losses, as a direct result of Defendants' manipulation of NYMEX and COMEX precious metals futures and options contracts during the Class Period.  For example, the U.S. Department of Justice's ("DOJ") Information underlying Defendant Edmond's guilty plea states that Edmonds placed a spoof order on October 12, 2012 to sell 402 COMEX silver futures contracts at the price of $33.610.  This spoof order caused COMEX silver futures prices to move artificially lower. Plaintiff Cognata purchased and sold 10 call option contracts on COMEX silver futures contracts on October 12, 2012. These options contracts decreased in value with the price of COMEX silver futures contracts. As a result, Plaintiff Cognata was injured when he sold options on COMEX silver futures contracts on October 12, 2012 at artificially lower prices caused by Defendants' manipulation.

**B.      Defendants**

11.     Defendant JPMorgan Chase & Co. ("JPM") is an investment bank and financial services company headquartered in this District at 270 Park Avenue, New York, New York, 10017. Defendant JPM provides businesses, institutions, and individuals with investment banking, treasury

and securities, asset management, private banking, and commercial banking services. Its U.S.-based traders transacted in precious metals futures and options contracts on NYMEX and COMEX throughout the Class Period.

12.     Defendant Edmonds was employed by Defendant JPM during the Class Period as a precious metals trader.  Defendant Edmonds is a resident of Brooklyn, New York and pled guilty to one count of conspiracy to defraud the market and manipulate the prices of NYMEX and COMEX precious metals futures contracts and one count of commodities fraud related to the allegations herein.

13.     Defendants John Does 1-10, inclusive, are other precious metals traders employed by Defendant JPM that participated in, facilitated, and assisted with the manipulation and unlawful conduct alleged herein.  These defendants are both known and unknown to the United States Attorney.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**A.     Market Background**

14.     **Commodity Futures Contract.** A commodity futures contract is a standardized bilateral executory agreement for the purchase and sale of a particular commodity at a specified price at a specified time in the future. In the context of futures trading, a commodity is the underlying instrument upon which a futures contract is based. The commodity underlying a futures contract can be a physical commodity, *e.g.* corn or silver, or a financial instrument, *e.g.* Treasury bills, foreign currencies, or the value of a stock index. The NYMEX and COMEX, as Designated Contract Markets ("DCMs") pursuant to Section 5 of the CEA, 7 U.S.C. § 7, specify the terms for each of the futures and options contracts they list, including the underlying commodity, trading units, price quotation, trading hours, trading months, minimum and maximum price fluctuation, and margin requirements.

15. **"Long" and "Short" Futures.** Futures contracts represent a commitment to make (in the case of a short contract) or take (long contracts) "delivery" of the underlying commodity at a defined point in the future.  NYMEX and COMEX precious metals futures contracts are physically delivered upon expiration.  However, futures contracts can also be offset before expiration.

16. **Offset by Trading.** Futures market participants almost always "offset" their futures contracts before the expiration month when delivery or settlement occurs. For example, a purchaser of one futures contract may liquidate, or cancel or offset, a future obligation to take delivery of the commodity underlying that contract by selling one equivalent futures contract. This sale of one contract offsets or liquidates the earlier purchase of one contract. The difference between the initial purchase price and the sale price represents the realized profit or loss for the trader.

17. **Options Contract**. An options contract is an agreement that gives the buyer, or "option holder," the right, but not the obligation, to either buy or sell something at a specified price during a specified time period. The buyer of an option pays an "option premium" to the seller for the right to buy (call) or sell (put) the underlying commodity (in this case, NYMEX and COMEX precious metals futures contracts).

18. **"Call options"** confer upon the buyer the right, but not the obligation, to buy the commodity at the specified price (the "strike" price). Call options confer upon the seller, or "option writer" the obligation to sell the commodity at the strike price. The buyer (the "long" or "option holder") of one call option wants the value of the underlying commodity to increase so that the buyer can exercise the option at a price less than the underlying commodity is worth and make a profit.  The seller (person that is "short") of a call option wants to avoid having to sell the underlying commodity at a price below market value. Therefore, a trader that purchases a call option will make money as the value of the underlying asset increases and lose money as it decreases.

19.     **"Put options"** confer upon the buyer the right, but not the obligation, to sell the underlying commodity at the strike price, and they confer upon the seller the obligation to buy the underlying commodity at the strike price if the option is exercised. The buyer of one put contract, assuming no offsetting hedges, wants the value of the underlying commodity to decrease so that the buyer can sell the commodity at above a market price. Conversely, the seller of the put option wants the price of the underlying asset to stay above the strike price so that the seller of the option would not be forced to buy the underlying futures at an above-market price.

20.     **The CME Group** is comprised of four DCMs including the NYMEX and COMEX.  The CME Group is also the holding company and the parent of the NYMEX and COMEX.  The CME Group's Global Headquarters is located at 20 South Wacker Drive, Chicago, Illinois 60606.

21.     **CME Globex** is owned and operated by The CME Group.  CME Globex is the premier electronic trading platform used to trade futures and options contracts.  CME Globex is an open access marketplace that allows a market participant to directly enter her own trades and participate in the trading process, including viewing the book of orders and real-time price data nearly 24 hours a day.

22.     CME Globex permits the trading of futures and options contracts or securities, between buyers and sellers, including trading other than on a principal-to-principal basis.  CME Globex is also subject to NYMEX and COMEX rules including rules that (a) govern the conduct of CME Globex users and (b) provide for disciplinary sanctions other than the exclusion from trading.[2]

---

[2] *See, e.g.*, NYMEX Rulebook, Rule 402 (*available at* https://www.cmegroup.com/content/dam/cmegroup/rulebook/NYMEX/1/4.pdf); COMEX Rulebook, Rule 402 (*available at* https://www.cmegroup.com/content/dam/cmegroup/rulebook/NYMEX/1/4.pdf); NYMEX Rulebook, Chapter 5, Globex Electronic Trading System Rules (*available at* https://www.cmegroup.com/content/dam/cmegroup/rulebook/NYMEX/1/5.pdf); COMEX Rulebook, Chapter 5, Globex Electronic Trading System Rules (*available at* https://www.cmegroup.com/content/dam/cmegroup/rulebook/NYMEX/1/5.pdf).

In addition, CME Globex falls within the Commodity Futures Trading Commission's definition of an "exchange" *i.e.*, "[a] central marketplace with established rules and regulations where buyers and sellers meet to trade futures and options contracts or securities."[3]

23.     A variety of CME Group products are available to trade on the CME Globex platform including, but not limited to, the precious metals futures and options contracts.[4]  To access CME Globex, customers must have a CME Group clearing firm relationship, CME Group-certified trading application and connectivity to CME Globex.[5]  Thus, anyone who has an account with a Futures Commission Merchant or Introducing Broker, who in turn has a CME Clearing guarantee, can trade on CME Globex.[6]

24.     **NYMEX Platinum Futures Contract** is a futures contract where the underlying commodity is 50 troy ounces of platinum.  NYMEX platinum futures contracts are listed on the NYMEX, subject to the rules and regulations of NYMEX including Chapter 105 of the NYMEX Rulebook, and traded electronically on the CME's Globex platform.

25.     **NYMEX Palladium Futures Contract** is a futures contract where the underlying commodity is 100 troy ounces of palladium.  NYMEX palladium futures contracts are listed on the NYMEX, subject to the rules and regulations of NYMEX including Chapter 106 of the NYMEX Rulebook, and traded electronically on the CME's Globex platform.

26.     **COMEX Silver Futures Contract** is a futures contract where the underlying commodity is 5,000 troy ounces of silver.  COMEX silver futures contracts are listed on the COMEX, subject to the rules and regulations of COMEX including Chapter 112 of the COMEX Rulebook, and traded electronically on the CME's Globex platform.

---

[3] https://www.cftc.gov/ConsumerProtection/EducationCenter/CFTCGlossary/glossary_e.html.
[4] CME Globex Reference Guide, p. 5 (*available at* https://www.cmegroup.com/globex/files/GlobexRefGd.pdf).
[5] *Id.*
[6] CME Globex Reference Guide, p. 2 (*available at* https://www.cmegroup.com/globex/files/GlobexRefGd.pdf).

27.     **COMEX Gold Futures Contract** is a futures contract where the underlying commodity is 100 troy ounces of gold.  COMEX gold futures contracts are listed on the COMEX, subject to the rules and regulations of COMEX including Chapter 113 of the COMEX Rulebook, and traded electronically on the CME's Globex platform.

**B.     Defendants Manipulated The Prices Of NYMEX And COMEX Precious Metals Futures And Options Contracts To Artificial Levels Throughout The Class Period**

28.     The purpose of Defendants' sophisticated manipulative scheme was for Defendants to inject materially false and illegitimate signals of supply and demand into the market in order to (a) induce other market participants to trade against Defendants' genuine orders (*i.e.*, orders that Defendants did want to execute) on the opposite side of the market from the spoof orders at prices, quantities, and times at which Plaintiff and the other market participants otherwise would not have traded, and (b) financially benefit Defendants.

29.     Accordingly, in order for Defendants to make money and avoid losses, Defendants routinely placed electronic orders to buy and sell NYMEX and COMEX precious metals futures contracts with the intent to cancel those orders before execution.  Defendant Edmonds, for his part, learned this sophisticated manipulative trading strategy from more senior traders employed by Defendant JPM and Defendant Edmonds personally deployed this manipulative strategy hundreds of times with the knowledge and consent of his immediate supervisors.

30.     Defendants placed the spoof orders electronically from computers at Defendant JPM's office in New York onto the NYMEX and COMEX.  The illegitimate signals conveyed by the spoof orders were then disseminated to the market.

31.     In placing the spoof orders, Defendants intended to and did inject materially false and illegitimate signals of supply and demand into the market for NYMEX and COMEX precious metals futures and options contracts.  The spoof orders thus were intended to induce Plaintiff and

other market participants to trade against Defendants' genuine orders that they wanted to execute on the opposite side of the market from the spoof orders at prices, quantities, and times at which Plaintiff and the other market participants otherwise would not have traded.

32.    Accordingly, the spoof orders were designed to, and did, artificially move the prices of NYMEX and COMEX precious metals futures and options contracts during the Class Period in a direction that was favorable to Defendants but unfavorable to Plaintiff and the Class.

33.    For example, on or about October 12, 2012, at approximately 1:08:48.831 p.m. (Central Daylight Time), Defendant Edmonds placed a spoof order to sell 402 COMEX silver futures contracts at the price of $33.610.  Defendants placed this order with the intent, at the time the offer was entered, to cancel the offer before it could be executed which sent materially false and illegitimate signals of supply and demand to the market so that Defendants could purchase approximately six COMEX silver futures contracts at an artificially low price.

34.    This manipulative strategy injured Plaintiff and the Class by causing them to transact in NYMEX and COMEX precious metals futures and options contracts at artificial prices and thereby suffer monetary losses.  For example, the DOJ found that Defendants' October 12, 2012 spoof order caused COMEX silver futures prices to decrease, resulting in a Class member selling a COMEX silver futures contract an artificially low price of $33.585.  Similarly, Plaintiff sold call options on COMEX silver futures contracts on October 12, 2012 at artificially lower prices caused by Defendants' spoofing scheme and lost money as a result.

35.    Through their manipulative conduct, Defendants unlawfully increased their profits at the expense of Plaintiff and the Class. As a result of Defendants' sophisticated manipulative strategy, innocent market participants such as Plaintiff who traded NYMEX and COMEX precious metals futures and options contracts, traded at artificial prices throughout the Class Period caused by Defendants manipulation.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and as representative of the following Class:

> All persons and entities that purchased or sold any NYMEX platinum futures contract, NYMEX palladium futures contract, COMEX silver futures contract, COMEX gold futures contract, or any option on those futures contracts, during the period of at least January 1, 2009 through at least December 31, 2015.[7]

37.     Excluded from the Class are Defendants, their officers and directors, management, employees, subsidiaries, or affiliates.  Also excluded from the Class is the Judge presiding over this action, his or her law clerks, spouse, any other person within the third degree of relationship living in the Judge's household, the spouse of such person, and the United States Government.

38.     The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that at least hundreds, if not thousands, of geographically dispersed Class members transacted in NYMEX platinum futures contract, NYMEX palladium futures contract, COMEX silver futures contract, COMEX gold futures contract, or any option on those futures contracts throughout the Class Period.

39.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the members of the Class sustained damages arising out of Defendants' common course of conduct in the violations of law as complained of herein. The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws as alleged herein.

---

[7] Plaintiff has defined the Class based on currently available information and hereby reserves the right to amend the definition of the Class, including, without limitation, the Class Period.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is an adequate representative of the Class and has no interest that is adverse to the interests of absent Class members. Plaintiff has retained counsel competent and experienced in class action litigation, including commodity futures manipulation class action litigation.

41.     Common questions of law or fact exist as to Plaintiff and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. These predominant questions of law and/or fact common to the Class include, without limitation:

    a.  Whether Defendants' manipulated the price of NYMEX platinum futures contract(s), NYMEX palladium futures contract(s), COMEX silver futures contract(s), COMEX gold futures contract(s), or the price of options on those futures contracts, in violation of the CEA;

    b.  Whether Defendants' manipulated the price of NYMEX platinum futures contract(s), NYMEX palladium futures contract(s), COMEX silver futures contract(s), COMEX gold futures contract(s), or the price of options on those futures contracts, to be artificial;

    c.  Whether such manipulation caused a cognizable injury under the CEA;

    d.  Whether Defendants' unlawful conduct caused actual damages to Plaintiff and the Class;

    e.  Whether Defendants were unjustly enriched at the expense of Plaintiff and members of the Class;

    f.  The operative time period and extent of Defendants' unlawful conduct; and

    g.  The appropriate nature and measure of Class-wide relief.

42.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Treatment as a class action will permit a "large number" of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of

claims by many class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

43.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

44.     The applicable statutes of limitations relating to the claims for relief alleged in herein were tolled because of fraudulent concealment involving both active acts of concealment by Defendants and inherently self-concealing conduct.

45.     By its very nature, the unlawful activity alleged herein was self-concealing. Defendants engaged in secret and surreptitious activities to submit and cancel trade orders in order to manipulate the prices of NYMEX and COMEX precious metals futures contracts to artificial levels.

46.     Defendants concealed their manipulative acts by, *inter alia*, placing orders electronically with the intent to buy or sell NYMEX and COMEX precious metals futures contracts at a certain price, even though they secretly had no intent of transacting at that level. At no point did Defendant disclose that they placed these orders to manipulate the prices of NYMEX and COMEX precious metals futures contracts. Because of such fraudulent concealment, and the fact that Defendants' manipulation is inherently self-concealing, Plaintiff and the members of the Class could not have discovered the existence of Defendants' manipulation any earlier than the date of the public disclosures thereof.

47.     As a result, Plaintiff and the Class had no knowledge of Defendants' unlawful and self-concealing manipulative acts and could not have discovered the same by the exercise of due diligence on or before November 5, 2018, when the U.S. District Court Judge Robert N. Chatigny granted the U.S. Department of Justice's motion to unseal the case, including the information filed against Defendant Edmonds.

48.     As a result of the concealment of Defendants' unlawful conduct, and the self-concealing nature of Defendants' manipulative acts, Plaintiff asserts the tolling of the applicable statute of limitations affecting the rights of the causes of action asserted by Plaintiff.

49.     Defendants are equitably estopped from asserting that any otherwise applicable limitations period has run.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## For Manipulation in Violation of the Commodity Exchange Act

## 7 U.S.C. §§ 1, *et seq.*

## (As Against All Defendants)

50.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

51.     Defendants through their acts alleged herein, from at least January 1, 2009 through at least December 31, 2015, specifically intended to and did cause unlawful and artificial prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, in violation of the CEA, 7 U.S.C. § 1, *et seq.*, through their use of fictitious buy and sell orders and other manipulative conduct.

52.     Defendants manipulated the price of a commodity in interstate commerce or for future delivery on or subject to the rules of any registered entity, in violation of the CEA.

53.     During the Class Period, the prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, did not result from the legitimate market information and the forces of supply and demand.  Instead, the prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, were artificially inflated, or deflated, by Defendants' spoofing and other manipulative trading activities.

54.     Throughout the Class Period, Defendants entered large orders to buy or sell without the intention of having those orders filled, and specifically intending to cancel those orders prior to execution. Defendants did this with the intent to inject illegitimate information about supply and demand into the market place, and to artificially move prices up or down to suit Defendants' own trades and positions. As a result of these artificial prices, Plaintiff and the Class suffered losses on their trades in NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts.

55.     Through their use of spoofing and other manipulative techniques, Defendants manipulated the prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, throughout the Class Period and thereby caused damages to Plaintiffs and Class members who purchased or sold such instruments at the artificially inflated or deflated prices.

56.     At all times and in all circumstances previously alleged herein, Defendants had the ability to cause and did cause artificial prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and

options on those futures contracts.  Defendants, either directly and/or through their employees and/or affiliates, were active in the markets for NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, and were aware of the effects of spoofing and other manipulative conduct on those markets.

57.     By their intentional misconduct, Defendants each violated Sections 6(c), 6(d), 9(a), and 22(a) of the CEA, 7 U.S.C. §§ 9, 13b, 13(a), and 25(a), throughout the Class Period.

58.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered damages and injury-in-fact due to artificial prices for NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, to which Plaintiff and the Class would not have been subject but for the unlawful conduct of the Defendants as alleged herein.

59.     Plaintiff and members of the Class are each entitled to actual damages sustained in NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts for the violations of the CEA alleged herein.

## SECOND CLAIM FOR RELIEF

### For Employing a Manipulative and Deceptive Device In Violation of The Commodity Exchange Act

### 7 U.S.C. §§ 1, *et seq.* and Regulation 180.1(a)

### (As Against All Defendants)

60.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

61.     Defendants' unlawful conduct as described herein, including the use of systematically submitting and cancelling spoof orders and engaging in other manipulative conduct in order to

artificially move prices for NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, constitutes the employment of a manipulative and deceptive device.

62.     As alleged herein, Defendants acted intentionally—and, even if they are found to not have acted intentionally, then at least acted recklessly—in employing the manipulative and deceptive device to procure ill-gotten trading profits at the expense of Plaintiff and the Class.

63.     By their intentional misconduct, Defendants each violated Sections 6(c) and 22(a) of the CEA, 7 U.S.C. §§ 9 and 25(a), throughout the Class Period.

64.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered damages and injury-in-fact due to artificial prices for NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, to which Plaintiff and the Class would not have been subject but for the unlawful conduct of the Defendants as alleged herein.

65.     Plaintiff and members of the Class are each entitled to damages for the violations of the CEA alleged herein.

## THIRD CLAIM FOR RELIEF

### Principal-Agent Liability for Violation of The Commodity Exchange Act

### 7 U.S.C. §§ 1, *et seq.*

### (As Against All Defendants)

66.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

67.     Each Defendant is liable under Section 2(a)(1) of the CEA, 7 U.S.C. § 2(a)(1), for the manipulative acts of their agents, representatives, and/or other persons acting for them in the scope of their employment.

68.     Plaintiff and members of the Class are each entitled to damages for the violation alleged herein.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

### (As Against All Defendants)

69.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

70.     Defendants financially-benefited from their unlawful acts. As alleged herein, Defendants submitted spoof orders electronically and employed other manipulative techniques to manipulate the prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, in an artificial direction.  Defendants intended to, and did, artificially alter prices in a direction that benefitted their trades and positions, at the expense of Plaintiff and the Class.

71.     These unlawful acts caused Plaintiff and other members of the Class to suffer injury, lose money, and transact at artificial prices for in NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts.

72.     As a result of the foregoing, it is unjust and inequitable for Defendants to have enriched themselves in this manner at the expense of Plaintiff and members of the Class, and the circumstances are such that equity and good conscience require Defendants to make restitution.

73.     Each Defendant should pay restitution for its own unjust enrichment to Plaintiff and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the requested relief as

follows:

a. for an Order certifying this lawsuit as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, designating Plaintiff as the Class representative, and appointing his counsel as Class counsel;

b. for a Judgment awarding Plaintiff and the Class damages against Defendants for their violations of the CEA, together with prejudgment interest at the maximum rate allowable by law;

c. for a Judgment awarding Plaintiff and the Class restitution of any and all sums of Defendants' unjust enrichment;

d. for an award to Plaintiff and the Class of their costs of suit, including reasonable attorneys' and experts' fees and expenses; and

e. for such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

trial by jury for all issues so triable.


Dated:  November 7, 2018                    Respectfully submitted,

                                            **LOWEY DANNENBERG, P.C.**

                                            By: _/s/ Vincent Briganti_
                                            Vincent Briganti
                                            Christian P. Levis
                                            Amanda Miller
                                            44 South Broadway
                                            White Plains, NY 10601
                                            Tel.: (914) 997-0500
                                            Fax: (914) 997-0035
                                            Email:  vbriganti@lowey.com
                                                    clevis@lowey.com
                                                    amiller@lowey.com

                                            _Attorneys for Plaintiff_