**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DOMINICK COGNATA, on behalf of himself and all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO., JOHN EDMONDS, and JOHN DOE Nos. 1-10<br><br>             Defendants. | Case No. 18-cv-10356 |
| MELISSINOS TRADING, LLC, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO., JOHN EDMONDS, and JOHN DOE Nos. 1-10,<br><br>             Defendants. | Case No. 18-cv-10628 |
| CASEY STERK and KEVIN MAHER, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO., JOHN EDMONDS, and JOHN DOES,<br><br>             Defendants. | Case No. 18-cv-10634 |
| KENNETH RYAN, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO., JOHN | Case No. 18-cv-10755 |

EDMONDS, and JOHN DOES Nos. 1-20,

               Defendants.

ROBERT CHARLES CLASS A., L.P. and
ROBERT L. TEEL, individually and on behalf
of all others similarly situated,

               Plaintiff,

    v.

JPMORGAN CHASE & CO., JOHN
EDMONDS, and JOHN DOE Nos. 1-10,

               Defendants.

Case No. 18-cv-11115

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT LOWEY
DANNENBERG, P.C. AS INTERIM LEAD CLASS COUNSEL, CONSOLIDATE
RELATED ACTIONS, AND SET A SCHEDULE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ............................................................................................................1

ARGUMENT....................................................................................................................5

    I. THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS…………... 5

    II. THE COURT SHOULD APPOINT LOWEY DANNENBERG AS INTERIM LEAD CLASS COUNSEL…………………………………………………………………….  7

        A. Rule 23(g)(3) authorizes the Court to appoint interim class counsel to act on behalf of the class before class certification……………………………………… 7

        B. Appointing Lowey as interim lead class counsel is in the best interests of the class…………………………………………………………………………………8

            1.      Rule 23(g)(1)(A)(i): Lowey has performed extensive work developing the class's claims and the allegations supporting the claims in this action. ...9

            2.      Rule 23(g)(1)(A)(ii): Lowey has extensive experience handling the types of claims asserted in this action. .............................................................9

            3.      Rule 23(g)(1)(A)(iii): Lowey has developed extensive knowledge of the applicable laws involved in litigating this action. ................................... 12

            4.      Rule 23(g)(1)(A)(iv): Lowey will commit substantial resources to representing the class.......................................................................................... 13

            5.      The Rule 23(g)(1)(B) discretionary factors also favor approving the proposed structure, with Lowey as interim lead class counsel. .................... 13

CONCLUSION…………………………………………………………………………....17

TABLE OF AUTHORITIES

## Cases

*Blackmoss Invs., Inc., v. ACA Capital Holdings, Inc,* 252 F.R.D. 188 (S.D.N.Y. 2008) ...............................8

*Buonasera v. Honest Co.*, 318 F.R.D. 17  (S.D.N.Y. 2016)...........................................................................12

*Cullinan v. Cemtrex, Inc.*, 287 F. Supp. 3d 277 (E.D.N.Y. 2018) ................................................................9

*Deangelis v. Corzine*, 286 F.R.D. 220 (S.D.N.Y. 2012) ......................................................................... 7, 24

*In re Amaranth Natural Gas Commodities Litig.,* 269 F.R.D. 366 (S.D.N.Y. 2010) ....................................18

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260 (S.D.N.Y. 2009)....................11

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318 HB, 2001 WL 709262 (S.D.N.Y. June 22, 2001) ...................................................................................................................................................7

*In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 SAS, 2011 WL 2732563 (S.D.N.Y. July 8, 2011)......7

*In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530 (S.D.N.Y. 2016) ...........................17

*In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184 (S.D.N.Y. 2008) ...................................................12

*In re Natural Gas Commodities Litig.*, 231 F.R.D. 171 (S.D.N.Y. 2005).....................................................18

*In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) .....................................................5

*Jacobs v. Castillo*, 612 F. Supp. 2d 369  (S.D.N.Y. 2009) ...........................................................................9

*Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir. 1990)..............................................................................9

*Laydon v. Mizuho Bank*, 183 F. Supp. 3d 409 (S.D.N.Y. 2016).................................................................17

*Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353 (1982).................................................5, 14

*Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037 (N.D. Ill. 2016) ......................................................17

*Sheet Metal Contractors Ass'n of N. N.J. v. Sheet Metal Workers' Intern. Ass'n*, 978 F. Supp. 529 (S.D.N.Y. 1997).................................................................................................................................................................9

## Rules

FED. R. CIV. P. 23 ..............................................................................................................................11, 12, 13

## Other Authorities

*Lowey Dannenberg Selects JND eDiscovery and Relativity to Save $2.5 Million in Class Action Case*,
    BUSINESSWIRE (Nov. 30, 2016, 9:00 AM),
    https://www.businesswire.com/news/home/20161130005484/en/Lowey-Dannenberg-Selects-
    JND-eDiscovery-Relativity-Save%20 ...................................................................................... 13

MANUAL FOR COMPLEX LITIGATION (Fourth) ("MANUAL") (2006) .......................... passim

Plaintiffs[1] respectfully request that this Court: (1) exercise its authority pursuant to Federal Rule of Civil Procedure 42(a) and consolidate the Related Actions[2]; (2) appoint Lowey Dannenberg, P.C. ("Lowey") as interim lead class counsel for the consolidated action under Federal Rule of Civil Procedure 23(g); (3) grant Plaintiffs leave to file a consolidated amended class action complaint; and (4) set a schedule for Defendants to respond to the consolidated amended complaint.[3]

## INTRODUCTION

Lowey filed the first complaint alleging that Defendants JPMorgan Chase & Co. ("JPMorgan") and former trader John Edmonds manipulated the prices of precious metals futures contracts traded on the New York Mercantile Exchange ("NYMEX") and Commodity Exchange Inc. ("COMEX"), in violation of the Commodity Exchange Act ("CEA") and common law. *See Cognata*, ECF No. 1. This CEA case is the latest chapter in Lowey's history as a pioneer in the field of commodity manipulation litigation. Over the last 20 years, Lowey has prosecuted the most

---

[1] "Plaintiffs" are Dominick Cognata, Melissinos Trading, LLC, Casey Sterk, Kevin Maher, Kenneth Ryan, Robert Charles Class A, L.P. and Robert L. Teel.

[2] The "Related Actions" are: *Cognata v. JPMorgan Chase & Co., John Edmonds*, 18-cv-10356 (S.D.N.Y.) ("*Cognata*"); *Melissinos Trading, LLC v. JPMorgan Chase & Co., John Edmonds*, 18-cv-10628 (S.D.N.Y.) ("*Melissinos*"); *Sterk and Maher v. JPMorgan Chase & Co., John Edmonds*, 18-cv-10634 (S.D.N.Y.) ("*Sterk*"); *Ryan v. JPMorgan Chase & Co., John Edmonds*, 18-cv-10755 (S.D.N.Y.) ("*Ryan*"); and *Robert Charles Class A., L.P., and Robert L. Teel v. JPMorgan Chase & Co., John Edmonds*, 18-cv-11115 (S.D.N.Y.) ("*Robert Charles*").

[3] Plaintiffs have conferred with counsel for Defendant JPMorgan, which consents to the consolidation of the related actions and the proposed schedule for the filing of a consolidated complaint and JPMorgan's anticipated motions to dismiss.  JPMorgan takes no position on Plaintiffs' request to appoint interim class counsel.

1

significant market manipulation cases in the history of the inherently "complex"[4] and "esoteric"[5] CEA, recovering hundreds of millions of dollars for futures contract investors. And Lowey has prosecuted CEA violations involving a wide-array of manipulative acts including: (i) benchmark-rate manipulation;[6] (ii) "spoofing;"[7] (iii) market power manipulation;[8] (iv) information-based

---

[4] *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (Lowey achieved settlement on behalf of the certified class of COMEX copper futures traders in excess of $149 million).

[5] *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 356 (1982) quoting H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News at 5843.

[6] *In re London Silver Fixing Ltd. Antitrust Litigation*, Case No. 14-md-2573 (S.D.N.Y.) (alleging that major financial institutions fixed a daily auction used to price silver and conspired to fix prices in the over-the-counter silver and silver futures market); *Sullivan v. Barclays PLC, et. al.*, No. 13-cv-02811 (S.D.N.Y.) (alleging that global financial institutions manipulated Euribor, a global reference rate used to benchmark and price settle more than $200 trillion of financial products, including Euribor futures contracts traded on the NYSE LIFFE exchange); *Laydon v. Mizuho Bank, Ltd.*, Case No. 12-cv-03419 (S.D.N.Y.) and *Sonterra Capital Master Fund Ltd. et al. v. UBS AG et al.*, Case No. 15-cv-05844 (S.D.N.Y.) (alleging that the world's largest financial institutions manipulated the Japanese Yen-LIBOR and the Euroyen Tokyo Interbank Offered Rate).

[7] *Boutchard v. Gandhi*, No. 18-cv-07041 (N.D. Ill.) (alleging that traders manipulated the prices of E-mini Dow futures contracts, E-mini S&P 500 futures contracts, and E-mini NASDAQ 100 futures contracts traded on the CME by "spoofing" the market—placing buy and sell orders and canceling them before fulfillment).

[8] *In re Amaranth Natural Gas Commodities Litigation*, Master File No. 07 Civ. 6377 (S.D.N.Y) (alleging Amaranth's market power manipulation of NYMEX natural gas futures and options contracts in 2006); *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999).

manipulation;[9] and (v) trader-based manipulation (*e.g.*, "banging the close").[10] In the markets at issue here, Lowey has considerable and direct experience litigating manipulation of the precious metals futures market, including silver. Lowey currently serves as co-lead counsel in *In re London Silver Fixing Ltd. Antitrust Litigation*, Case No. 14-md-2573 (VEC) (S.D.N.Y.) before Judge Caproni. Judge Caproni praised Lowey's experience, approach, and expert resources brought to bear on behalf of the class, calling Lowey's complaint a "particularly outstanding effort."[11] In connection with the motion to dismiss in *Silver Fixing*, Lowey provided the Court an all-day tutorial on the workings of the physical silver and silver futures market. Lowey has already leveraged its unparalleled experience to diligently work proactively on behalf of the class in this case by consulting with leading industry experts and economists to analyze market data and further develop Plaintiffs' case against Defendants.

After Lowey filed the first complaint, several related class action complaints were filed by other exceptionally experienced and nationally recognized law firms: Hausfeld LLP, Nussbaum Law Group, P.C., Girard Sharp LLP, and Scott + Scott, LLP.[12] Lowey organized meetings with key

---

[9] *In re Natural Gas Commodity Litig.*, Master File No. 03 Civ. 6186 (S.D.N.Y.) (alleging manipulation of natural gas futures contracts traded on the NYMEX by falsely reporting transaction data to publications that compile and publish the price benchmarks used to settle and price global trade).

[10] *In re Optiver Commodities Litig.*, Master File No. 08 Civ. 6842 (S.D.N.Y) (alleging "banging the close" manipulation of NYMEX light sweet crude oil, heating oil and gasoline futures contracts prices by Optiver).

[11] Order, *In re London Silver Fixing Ltd., Antitrust Litig.*, No. 14-md-2573 (VEC), (S.D.N.Y. Nov. 25, 2014) (Caproni, J.), ECF No. 17.

[12] Plaintiffs' counsel were just alerted to the filing today of another related case, captioned *Serri v. JPMorgan Chase & Co., John Edmonds, and John Doe Nos. 1-10*, No. 18-11458 (S.D.N.Y.)("*Serri*"). Lowey has not had the opportunity to confer with plaintiff's counsel in *Serri*, but will endeavor to do so on Monday.  We do not believe that the filing of another related case should delay the Court's consideration and approval of the

attorneys from these firms to discuss an efficient organizational structure for prosecuting this matter. The early efforts of Lowey to organize the case have resulted in the unanimous agreement among these Plaintiffs' counsel that Lowey be appointed interim lead class counsel.  JPMorgan has also consented to consolidation of the Related Actions and the proposed schedule for the filing of a consolidated complaint and JPMorgan's anticipated motions to dismiss. Courts generally encourage such "private ordering,"[13] and courts in this District support adopting this streamlined approach. *Deangelis v. Corzine*, 286 F.R.D. 220, 225 (S.D.N.Y. 2012) (noting that agreeing on a "leadership structure evinces both an appreciation for the complexity of the Commodities Action and an ability to work cooperatively to create a decision-making framework among plaintiffs' counsel."). And Courts encourage the "designation of interim counsel [to] clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL § 21.11 (2004).

As detailed below, Lowey has extensive experience litigating complex class actions and has been repeatedly appointed to serve as class counsel in CEA and antitrust cases involving some of the world's largest financial markets, recovering billions of dollars on behalf of investors and Fortune 100 companies. The Court should grant Plaintiffs' motion because appointing Lowey interim lead class counsel will provide organizational structure and leadership in the consolidated action. For these reasons, we respectfully submit that the Court should consolidate the Related Actions, appoint

---

requested relief because of the overriding need to consolidate the Related Actions, appoint interim lead class counsel, and move forward with the agreed-to schedule.

[13] MANUAL FOR COMPLEX LITIGATION (Fourth) ("MANUAL") § 10.22 (2006) ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged.").

Lowey as lead class counsel, grant leave to file a consolidated amended class action complaint, and set a schedule for Defendants to respond.

## ARGUMENT

## I.     THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS.

Consolidation is appropriate here because the Related Actions before the Court "involve common questions of law or fact." *Blackmoss Invs., Inc., v. ACA Capital Holdings, Inc*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008); *see also* Related Case Statement, *Melissinos Trading*, ECF No. 4, at 2 ("The newly filed case relates to the earlier filed case in that both cases arise out of Defendants' alleged unlawful manipulative conduct, namely Defendants' manipulation of the price of precious metals futures contracts. Both cases assert similar claims under the Commodity Exchange Act and have the same defendants."). Federal Rule of Civil Procedure 42(a) provides that when two or more actions before the court involve a common question of law or fact, the court may:

> (1) join for hearing or trial any or all matters at issue in the actions;
>
> (2) consolidate the actions; or
>
> (3) issue any other orders to avoid unnecessary cost or delay.[14]

In deciding whether to consolidate cases, courts "balance the interest of judicial convenience against any delay, confusion, or prejudice that might result from such consolidation." *Sheet Metal Contractors Ass'n of N. N.J. v. Sheet Metal Workers' Intern. Ass'n*, 978 F. Supp. 529, 531 (S.D.N.Y. 1997). District courts have broad discretion in this matter. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990). However, courts in this Circuit "have taken the view that considerations of judicial economy favor consolidation." *Celotex*, 899 F.2d at 1285; *see also Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) (explaining that "consolidation of cases with common questions of law or fact is favored 'to avoid unnecessary costs or delay' and to 'expedite trial and eliminate unnecessary

---

[14] *See also* Manual, § 11.631 (2004).

repetition and confusion'") (internal citations omitted); *Cullinan v. Cemtrex, Inc.*, 287 F. Supp. 3d 277, 283 (E.D.N.Y. 2018).

Plaintiffs in all of the Related Actions seek to represent a class of investors who traded COMEX gold or silver futures or options contracts or NYMEX platinum or palladium futures or options contracts from at least January 1, 2009 through December 31, 2015. *See Cognata*, ECF No. 1 ¶ 36; *Melissinos*, ECF No. 1, ¶ 17; *Sterk*, ECF No. 1, ¶ 53; *Ryan*, ECF No. 1, ¶ 34; *Robert Charles*, ECF No. 1, ¶ 21. Plaintiffs allege, among other things, that Defendants manipulated the prices of these precious metals futures and options contracts through a technique called "spoofing" whereby Defendants routinely, and intentionally, placed electronic orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution to create an artificial price from which they would benefit. *See Cognata*, ECF No. 1, ¶ 3; *Melissinos*, ECF No. 1, ¶ 4; *Sterk*, ECF No. 1, ¶ 4; *Ryan*, ECF No. 1, ¶ 2; *Robert Charles*, ECF No. 1, ¶ 1. The Related Actions also rely on the same guilty plea by former JPMorgan precious metals trader, John Edmonds, who pled guilty to one count of conspiracy to defraud the market and manipulate the prices of NYMEX and COMEX precious metals futures contracts and one count of commodities fraud.  *See Cognata*, ECF No. 1, ¶¶ 2, 10; *Melissinos*, ECF No. 1, ¶¶ 3-4, 13; *Sterk*, ECF No. 1, ¶¶ 3, 15; *Ryan*, ECF No. 1, ¶¶ 2, 6, 20; *Robert Charles*, ECF No. 1, ¶¶ 2, 11, 20.

The Related Actions also raise substantially identical questions of law, including overlapping claims against the Defendants under the CEA. *See Cognata*, ECF No. 1, ¶¶ 50-68; *Melissinos*, ECF No. 1, ¶¶ 61-69; *Sterk*, ECF No. 1, ¶¶ 65-83; *Ryan*, ECF No. 1, ¶¶ 42-61; *Robert Charles*, ECF No. 1, ¶¶ 31-48. These common legal questions, which arise from the same set of facts and occurrences, can be dealt with most efficiently through consolidation. And consolidation here will not result in any delay, confusion, or prejudice. The Related Actions are at the same early stage of litigation. Under the proposed schedule, if the cases were consolidated, Plaintiffs would file an amended consolidated

class action complaint by February 8, 2018, and Defendants' response deadline would then follow. Thus, consolidation will eliminate duplicative discovery and motion practice, saving all parties time and money, as well as conserving judicial resources. Moreover, all Plaintiffs support consolidation and JPMorgan consents to consolidation. The fact that no party objects to consolidation "weighs heavily against the potential for prejudice," demonstrating that the Court should grant Plaintiffs' motion to consolidate the Related Actions. *Kaplan*, 240 F.R.D at 91.

## II.    THE COURT SHOULD APPOINT LOWEY DANNENBERG AS INTERIM LEAD CLASS COUNSEL.

### A.    Rule 23(g)(3) authorizes the Court to appoint interim class counsel to act on behalf of the class before class certification.

FED. R. CIV. P. 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." It is standard practice for courts to appoint interim class counsel to provide clarity to all parties involved in the litigation—the Court, Defendants, and Plaintiffs—about who has the authority to act on behalf of and bind the class. *See* MANUAL § 21.11 (2004) (explaining that the "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.").

Rule 23 does not include any specific criteria regarding the appointment of interim class counsel. Thus, courts typically consider the four factors in Rule 23(g)(1)(A) relevant to the selection of class counsel. *Buonasera v. Honest Co.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016) (citing *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008)). The factors include:

   (i)    the work counsel has done in identifying or investigating potential claims in the action;

   (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)     counsel's knowledge of the applicable law; and

(iv)     the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A). None of these factors are individually determinative; rather, they provide a framework under which the Court may analyze and determine whether counsel can fairly and adequately represent the class. Further, the Court, in its discretion, may consider any other criteria it deems relevant. FED. R. CIV. P. 23(g)(1)(B).

When presented with a single application for appointment as class counsel (as is the case here), Rule 23(g)(2) provides that a district court may appoint the proposed interim class counsel upon a finding that such counsel are "adequate under Rule 23(g)(1) and (4)." FED. R. CIV. P. 23(g)(2). A common means of selecting class counsel is by "private ordering." MANUAL, §21.272. That is, "[t]he lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id.* Efforts of plaintiffs' counsel to coordinate their activities among themselves "should be encouraged." MANUAL, § 10.22. Here, all Plaintiffs' counsel in the above-captioned cases agree that Lowey should be appointed interim lead class counsel. The Court should approve that decision for the reasons set forth below.

B.     **Appointing Lowey as interim lead class counsel is in the best interests of the class.**

Lowey is more than "adequate" to serve as interim lead class counsel because it is the "best able to represent the interests of the class" in this complex commodities manipulation case. FED. R. CIV. P. 23(g)(2). Its firm résumé (attached as Exhibit A) shows that it has been directly involved in achieving the largest class action recoveries in the history of the CEA.

1.    **Rule 23(g)(1)(A)(i): Lowey has performed extensive work developing the class's claims and the allegations supporting the claims in this action.**

Lowey filed the first case against JPMorgan and Defendant Edmonds on behalf of Plaintiff Cognata on November 7, 2018. Before filing *Cognata*, Lowey: (a) conducted detailed factual and legal research to allege the best possible claims in the *Cognata* complaint; (b) consulted with economic experts; (c) analyzed precious metals futures market and pricing data; (d) consulted with market participants; (e) investigated the Defendants' conduct; and (f) consulted decades of research developed in the numerous other successful CEA class actions it has prosecuted in this District, including cases alleging manipulation of precious metal futures markets. *Cognata*, therefore, reflects careful and considered judgments concerning the scope of the class, the Defendants named, as well as the claims asserted and demonstrates the extensive amount of work Lowey has so far performed on behalf of the class. Lowey has already begun organizing to begin drafting a consolidated amended class action complaint in anticipation of this Court's order. This will avoid any unnecessary delay and ensure that class benefits from the detailed investigations of all Plaintiffs' Counsel.

2.    **Rule 23(g)(1)(A)(ii): Lowey has extensive experience handling the types of claims asserted in this action.**

Lowey has represented clients in commodity futures litigation since the 1970s, successfully prosecuting class actions against massive financial institutions and corporations and achieving substantial recoveries for investors. In "esoteric"[15] CEA cases like this one, Lowey is a leader in the class action bar. The firm, founded by Stephen Lowey in the 1960s, played a major role in the complex litigation that ensued following the highly publicized May 1976 default of Maine potato futures contracts that occurred when the sellers of 1,000 contracts failed to deliver approximately 50 million pounds of potatoes. Ever since, Lowey has successfully prosecuted as court appointed lead

---

[15] *Merrill Lynch*, 456 U.S. at 356 (1982) quoting H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News at 5843.

or co-lead class counsel, or individual plaintiff's counsel, the most significant and complex

commodity manipulation actions since the enactment of the CEA, which have included successful

class certification motions. For example:

- ***In re Sumitomo Copper Litigation***, Master File No. 96 CV 4854 (S.D.N.Y.) (Pollack, J.). Lowey, as one of three executive committee members leading the prosecution, achieved a settlement on behalf of the certified class of Commodity Exchange, Inc. ("COMEX") copper futures traders in excess of $149 million, which at the time was the largest class action recovery in CEA history;

- ***In re Amaranth Natural Gas Commodities Litigation***, Master File No. 07 Civ. 6377 (S.D.N.Y) (Scheindlin, J.) ("*Amaranth*"). Lowey served as co-lead counsel in this certified class action alleging manipulation of NYMEX natural gas futures and options contracts in 2006 by Amaranth LLC, one of the country's largest hedge funds prior to its widely-publicized, multi-billion dollar collapse. Lowey achieved settlements totaling $77.1 million, more than ten times the amount recovered by the Federal Energy Regulatory Commission ("FERC") and the Commodity Futures Trading Commission ("CFTC"). At that time, the *Amaranth* settlements represented the fourth-largest commodity manipulation class recovery in CEA history;

- ***Hershey v. Pacific Investment Management Corp.***, Case No. 05-C-4681 (RAG) (N.D. Ill.). Lowey served as counsel to certified class representative Richard Hershey in an action alleging manipulation of Chicago Board of Trade ("CBOT") U.S. 10-Year Treasury Note futures contracts, which settled for $118.75 million, the then-second largest recovery in the history of the CEA; and

- ***In re Natural Gas Commodity Litigation***, Master File No. 03 CV 6186 (S.D.N.Y.) (Marrero, J.). Lowey served as co-lead counsel in this certified class action alleging false reporting of physical natural gas price and volume information by more than 20 large energy companies to leading natural gas industry publishers whose natural gas price indices were used to price and settle hundreds of millions of dollars in exchange traded natural gas derivatives. Lowey achieved recoveries in excess of $101 million on behalf of a certified class of New York Mercantile Exchange Inc. ("NYMEX") natural gas futures and options traders. This was the third largest commodity manipulation class action recovery in CEA history at the time.

The strategies and insights Lowey has developed in the above CEA cases have informed and

will continue to inform the strategy Lowey employs in prosecuting this CEA case. But these cases

are just the tip of the iceberg. Lowey continues to represent sophisticated clients in complex

securities, commodities, antitrust, and RICO-based litigation achieving billions of dollars in recovery.

Lowey's commodities team is led by shareholder Vincent Briganti, who is currently prosecuting class

10

actions as lead or co-lead counsel in some of the most complex financial litigation in the country.

For example:

- ***In re London Silver Fixing Ltd. Antitrust Litigation***, Case No. 14-md-2573 (VEC) (S.D.N.Y.) ("Silver Fixing"). Lowey was appointed co-lead counsel in a contested lead counsel application involving several prominent class action firms. Plaintiffs allege that a group of eight major financial institutions colluded to fix the outcome of a daily auction used to set the worldwide price of silver and conspired to fix prices in the over-the-counter silver and silver futures market. Lowey secured a $38 million settlement from Deutsche Bank and valuable cooperation that it is using in the ongoing prosecution of the case against the remaining defendants. Judge Valerie E. Caproni praised Lowey's experience, approach, and expert resources brought to bear on behalf of a class. Order, *In re London Silver Fixing Ltd., Antitrust Litig.*, No. 14-md-2573 (VEC), (S.D.N.Y. Nov. 25, 2014) (Caproni, J.), ECF No. 17 (appointing Lowey co-lead counsel because, *inter alia*, "the Lowey [ ] complaint reveals a particularly outstanding effort.");

- ***Sullivan v. Barclays PLC, et. al.***, No. 13-cv-02811 (PKC) (S.D.N.Y.), ECF No. 424. Judge Castel recognized Lowey's skill and expertise in approving a $309 million settlement with three defendants for allegedly manipulating the Euro Interbank Offered Rate ("Euribor"). Lowey recently announced settlements with additional defendants, bringing the total recovery for investors in the Euribor case to more than $491 million;

- ***In re Mexican Government Bonds Antitrust Litig.***, 18-cv-02830 (S.D.N.Y.) (JPO), Lowey was appointed sole lead class counsel in case alleging a conspiracy among the world's largest Mexican government bond dealers to fix bond prices in the United States;

- ***Laydon v. Mizuho Bank, Ltd.***, Case No. 12-cv-03419 (GBD) (S.D.N.Y.) ("Euroyen Litigation"). Lowey is the court-appointed sole lead counsel of this proposed class action alleging the intentional and systematic manipulation (through false reporting and other unlawful means) of Yen LIBOR and the Euroyen TIBOR by, among others, Barclays, Rabobank, Deutsche Bank, RBS, and UBS. Judge Daniels has granted final approval for settlement agreements with JPMorgan, Citigroup, HSBC, Deutsche Bank, The Bank of Tokyo-Mitsubishi, and Mitsubishi UFJ Trust and Banking Corporation, and R.P. Martin totaling $236 million; and

- ***Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG***, Case No. 15-cv-871 (SHS) (S.D.N.Y.) ("Swiss franc Litigation"). Lowey is the court-appointed sole lead counsel of this proposed class action alleging the manipulation of Swiss Franc LIBOR and Swiss Franc LIBOR-based derivatives prices and pricing by, among others, Deutsche Bank, RBS, and UBS. Judge Stein granted preliminary approval of a $22 million settlement with JPMorgan on August 16, 2017.

Based on the experience gained in the successful prosecutions and landmark results in the above cases, Lowey is uniquely positioned to best represent the interests of the proposed class and to lead the successful prosecution of this case.

3.      **Rule 23(g)(1)(A)(iii): Lowey has developed extensive knowledge of the applicable laws involved in litigating this action.**

Lowey has institutional knowledge of the law applicable to the claims asserted here as pioneers of complex CEA cases. Its experience in leading CEA manipulation cases is second to none. For example, Lowey achieved landmark results by successfully opposing defendants' motion to dismiss in two of the first cases in the country to consider the CEA's "manipulative device" provision, which was enacted as part of the 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act. *Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1055-58 (N.D. Ill. 2016) ("*Ploss*"); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 570 (S.D.N.Y. 2016) (Caproni, J.). The Complaint here also alleges a CEA manipulative device claim and Lowey will utilize its expert knowledge of this area of the law to effectively prosecute this action on behalf of Plaintiff and the Class. Lowey's legal and practical knowledge will assuredly benefit the class.

Lowey is also well-versed in the various discovery issues that may be raised during this litigation, and has extensive experience in complex cases, litigating and winning motions to compel the production of documents from some of the world's largest banks. For example, in *Laydon v. Mizuho Bank,* Lowey defeated nine defendants' motion to withhold documents under U.K. data privacy and bank secrecy laws, substantially accelerating discovery. *See* 183 F. Supp. 3d 409 (S.D.N.Y. 2016). And Lowey is skilled at the substantive and procedural aspects of managing complex litigation. For example, Lowey has successfully litigated multiple CEA class certification motions, each of which was upheld on appeal. *See, e.g., In re Amaranth Natural Gas Commodities Litig.,* 269 F.R.D. 366 (S.D.N.Y. 2010) *petition for review denied*, Motion Order, 10-4110-cv (2d Cir. Dec. 28,

2010), ECF No. 54; *In re Natural Gas Commodities Litig.,* 231 F.R.D. 171 (S.D.N.Y. 2005) *petition for review denied*, Mandate, 03-cv-6186 (S.D.N.Y. Aug. 30, 2006) ECF No. 464.

### 4. Rule 23(g)(1)(A)(iv): Lowey will commit substantial resources to representing the class.

Lowey has more than 45 attorneys that specialize in this kind of litigation and has advanced millions of dollars on behalf of the classes it has represented in the past, is currently well-capitalized, and is prepared to advance similar substantial sums in the prosecution of this case. Lowey is also uniquely able to conduct end-to-end e-discovery in-house, a capability it developed and applied in numerous complex cases that involved millions of documents. Lowey has earned national recognition for its use of cutting-edge e-discovery technology to save millions in expenses and tens of thousands of hours in review time in other large class actions.[16] These resources and experience will not only result in a savings for the class over the course of this litigation, but will also allow Lowey to effectively manage the high volume of documents typically produced during discovery in an action of this complexity.

### 5. The Rule 23(g)(1)(B) discretionary factors also favor approving the proposed structure, with Lowey as interim lead class counsel.

Rule 23(g)(1)(B) states that courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Several additional factors support appoint Lowey as interim class counsel here.

*First*, each of these Plaintiffs' counsel supporting Lowey for lead counsel, Hausfeld, Scott & Scott, Nussbaum Law, and Girard Sharp, likewise have impressive credentials and experience that

---

[16] *See Lowey Dannenberg Selects JND eDiscovery and Relativity to Save $2.5 Million in Class Action Case*, BUSINESSWIRE (Nov. 30, 2016, 9:00 AM), https://www.businesswire.com/news/home/20161130005484/en/Lowey-Dannenberg-Selects-JND-eDiscovery-Relativity-Save%20.

13

will contribute to advancing the interests of the class. Each has been appointed lead or co-lead

counsel multiple times in similarly large and complex cases, including in the financial services sector.

For example, Hausfeld LLP and Scott & Scott LLP are co-lead counsel in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13 Civ. 7789 (S.D.N.Y.) (LGS) ("*ForEx*"), where they have recovered more than $2.3 billion for investors in foreign exchange products. Hausfeld is co-lead counsel in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11 Civ. 5450 (S.D.N.Y.) (NRB), in which class settlements to date total $590 million.

Additionally, as co-lead counsel, Scott+Scott achieved $504.5 million in settlements on behalf of investors in interest rate derivatives, Eurodollar futures and options, and U.S. Treasury futures and options, among other financial instruments in an antitrust class action alleging manipulation of the ISDAfix benchmark in *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.*, Case No. 1:14-cv-07126 (S.D.N.Y.). As to the quality of Scott+Scott's representation, Judge Furman observed at the November 8, 2018, Fairness Hearing:

> I do agree that counsel did an extraordinary job here. This was I think it is fair to say probably the most complicated case I have had since I have been on the bench. That is close to seven years at this point. I have had it much of that seven years. The point still stands. I cannot really imagine how complicated it would have been if I didn't have counsel who had done as admirable job in briefing it and arguing as you have done. You have in my view done an extraordinary service to the class.

Hearing Tr. 27:16-24.

Similarly, Linda Nussbaum, NLG's founding partner, recently led NLG's active work in a variety of complex financial markets cases. NLG is among the court-appointed co-leads in the *Aluminum* and *Zinc* antitrust actions, in which plaintiffs allege complex manipulation of the relevant commodities markets. *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (S.D.N.Y.); *In re Zinc Antitrust Litig.*, No. 14-cv-3728 (S.D.N.Y.). Ms. Nussbaum is also one of four co-lead counsel chosen from among over a dozen applicants to represent an equitable relief class in *In re Payment*

*Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-1720 (E.D.N.Y.) ("*Interchange Fee*"). Further, NLG has several other distinguished attorneys with extensive experience litigating complex class actions and cases related to the manipulation of the commodities market.

And Girard Sharp has demonstrated its skill and tenacity in resolving complex litigation in several important cases.  For example, in *Skold v. Intel Corp.*, No. 05-cv-039231 (Cal. Super. Ct. Santa Clara Cty.), Girard Sharp represented consumers through a decade of hard-fought litigation, ultimately certifying a nationwide class under an innovative "price inflation" theory and negotiating a settlement that provided cash refunds.  In approving the settlement, Judge Peter Kirwan wrote: "It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail…. Simply put, Class Counsel earned their fees in this case." In the *Provident Royalties* Litigation, Girard Sharp served as lead counsel in an action against broker-dealer Securities America, Inc. and its corporate parent, Ameriprise, Inc. in connection with sales of unregistered investments.  Mr. Girard led negotiations resulting in a $150 million settlement. In approving the settlement, Judge W. Royal Furgeson wrote: "Class counsel in this case possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation." *Billitteri v. Sec. Am., Inc.*, No. 09-cv-01568 (F), 2011 WL 3585983 at *8 (N.D. Tex. Aug. 4, 2011).

*Second*, this motion is the result of strong organization by sophisticated and experienced counsel who have successfully worked together many times before to achieve landmark results for class members. For example, Lowey worked closely with co-lead Hausfeld LLP and Scott & Scott LLP in the *ForEx* case, where it served as allocation counsel on behalf of over-the-counter foreign exchange investors. Lowey also works closely with Hausfeld LLP and Scott & Scott LLP as lead counsel in the *In re Mexican Government Bonds Antitrust Litig.*, 18-cv-02830 (S.D.N.Y.) (JPO), where

plaintiffs allege a conspiracy among the world's largest Mexican government bond dealers to fix bond prices in the United States. Similarly, Lowey has successfully worked with the Nussbaum Law Group, P.C. in the *Ploss* and the *Silver Fixing* cases described above. And in 2018, Girard Sharp[17] collaborated successfully with Lowey in *In re Lidoderm Antitrust Litigation*, MDL No. 14-md-02521 (N.D. Cal.), a certified class action on behalf of indirect purchasers alleging three drug manufacturers colluded to suppress generic competition. Girard Sharp served as lead counsel and Lowey as counsel for a group of health insurers. The action was settled one week before trial for $104.5 million, the largest indirect purchaser recovery to date in a generic suppression case.

*Third*, the unanimous decision among highly sophisticated counsel to support appointing Lowey as interim class counsel strongly supports granting Plaintiffs' motion. The Manual for Complex Litigation advises that efforts by "attorneys [to] coordinate their activities without the court's assistance . . . should be encouraged." MANUAL, § 10.22 (2006).[18] Such "private ordering" is common and complex cases and a factor courts consider when deicing whether to approve a proposed leadership structure. *See* MANUAL, §21.272; *see also Deangelis*, 286 F.R.D. at 225 ("That a large number of experienced counsel are satisfied to be represented by the Consensus Plaintiffs is some measure of the respect they command and the confidence of their peers that they will serve well in the role.") (internal citations and quotations omitted).

---

[17] Until October 1, 2018, Mr. Girard's firm was named Girard Gibbs LLP.

[18] *See also* Third Circuit Task Force Report, Selection of Class Counsel at 95 (Jan. 2002), http://www.ca3.uscourts.gov/task-force-selection-class-counsel ("Case law and experience indicates that the dominant scenario for appointing class counsel is deference to private ordering. The Task Force believes that there is generally no reason to hold an auction when the court is presented with qualified counsel who has been chosen through private ordering.").

*Finally*, through their extensive, multi-decade experience prosecuting commodity manipulation actions, Lowey has developed significant relationships with industry experts, economists, sophisticated market participants, regulatory personnel, and settlement administration experts. These relationships have already been put to work as Lowey begins work on drafting a consolidated amended complaint. Thus, appointing Lowey as lead counsel gives the class a significant knowledge advantage that facilitates the successful prosecution of this CEA class actions.

## CONCLUSION

For the above reasons, this Court should enter the [Proposed] Order and (1) exercise its authority pursuant to Federal Rule of Civil Procedure 42(a) and consolidate the Related Actions; (2) appoint Lowey as interim lead class counsel for the consolidated action under Federal Rule of Civil Procedure 23(g); (3) grant Plaintiffs leave to file a consolidated amended class action complaint; and (4) set a schedule for Defendants to respond to the consolidated amended complaint.

Dated:  December 7, 2018
White Plains, New York

LOWEY DANNENBERG P.C.

/s/ Vincent Briganti
Vincent Briganti
44 South Broadway
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
Email:  vbriganti@lowey.com

*Counsel for Plaintiff Dominick Cognata and*
*Proposed Interim Lead Class Counsel*

HAUSFELD LLP

Scott Martin
33 Whitehall Street, 14th Floor
New York, New York 10004
Tel.: (212) 357-1195
Fax: (212) 202-4322

17

Email:  smartin@hausfeld.com

Reena A. Gambhir
Timothy S. Kearns
1700 K Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
Email: tkearns@hausfeld.com
Email: rgambhir@hausfeld.com
*Counsel for Plaintiff Melissinos Trading, LLC*

NUSSBAUM LAW GROUP, P.C.

Linda P. Nussbaum
1211 Avenue of the Americas
New York, New York 10036
Tel.: (917) 438-9102
Email:  lnussbaum@nussbaumpc.com

*Counsel for Plaintiffs Casey Sterk and Kevin Maher*

GIRARD SHARP LLP

Daniel C. Girard
601 California Street, Suite 1400
San Francisco, CA 944108
Tel.: (415) 981-4800
Fax: (415) 981-4846
Email: dgirard@girardsharp.com
*Counsel for Plaintiff Kenneth Ryan*

SCOTT + SCOTT, L.L.P.

Thomas Laughlin, IV
Deborah Clark-Weintraub
230 Park Avenue
17th Floor
New York, New York 10169
Tel.: (212) 223-6444
Email: tlaughlin@scott-scott.com

*Counsel for Plaintiffs Robert Charles Class A., L.P.
and Robert L. Teel*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit and formatting rules set forth in Section 2.D. of the Individual Practices of Judge John G. Koeltl.  This document contains 4809 words.

Dated: December 7, 2018

/s/ Vincent Briganti

*Attorney for Plaintiff Dominick Cognata*
*and Proposed Interim Class Counsel*