# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE JPMORGAN PRECIOUS METALS SPOOFING LITIGATION | Master Docket No. 18-cv-10356 (GHW)<br><br>CLASS ACTION |
| THIS DOCUMENT RELATES TO:<br>All Actions | |

## MOTION OF THE UNITED STATES
## FOR A THIRD EXTENSION OF THE STAY

The United States, through its undersigned counsel, respectfully submits this Motion for a Third Extension of the Stay that is set to expire on June 30, 2020.  For the reasons set forth below, the United States respectfully requests that the Court extend the current stay of this consolidated civil action through the conclusion of a related criminal prosecution pending in *United States v. Smith, et al.*, Case No. 19 CR 669 (N.D. Ill.).[1]

The criminal case in *Smith* arises from substantially the same conduct, events, and time period as the allegations in this consolidated civil action.  The government respectfully suggests that extending the stay would benefit this Court and all parties by minimizing redundant litigation, narrowing the scope of discovery and issues to be adjudicated in this case, and relieving potential defendants of the choice of having

---

[1] This consolidated action was initially assigned to Judge Koeltl, who granted the government's motions to intervene and to stay (Dkt. No. 26), motion to extend the stay (Dkt. No. 40), and second motion to extend the stay (Dkt. No. 48).  This action was reassigned to Judge Woods on February 25, 2020, and this is the government's first motion to extend the stay since the action was reassigned.

to potentially invoke their rights against self-incrimination.  Further, since the last extension of the stay, the *Smith* case was scheduled for trial beginning on April 5, 2021, and therefore the extension requested by the government is not open-ended and is a reasonable period for the continuation of the stay.

Prior to filing this motion, the government conferred with Sullivan & Cromwell LLP, counsel for defendant JPMorgan Chase & Co. ("JPMorgan"), and counsel for John Edmonds, and all stated that they do not oppose the government's request to extend the stay through the resolution of the criminal case.  The government also conferred with Lowey Dannenberg, P.C., interim lead class counsel on behalf of all plaintiffs, which stated that the plaintiffs oppose the government's request to extend the stay through the resolution of the criminal case.  The government understands that the plaintiffs seek to extend the stay for only three months and to have the parties report back to the Court after those three months regarding whether the stay should be extended.

## **BACKGROUND**

This consolidated civil action concerns allegations that precious metals traders employed by JPMorgan manipulated the prices of precious metals futures and options contracts from approximately January 1, 2009 through December 31, 2015.  The first individual complaint filed in this now-consolidated action was filed on November 7, 2018.  (*See* Complaint, *Cognata v. JPMorgan Chase & Co., et al.*, 18-cv-10356 (S.D.N.Y. Nov. 7, 2018) ("*Cognata* Complaint").)  On February 5, 2019, Judge Koeltl consolidated the various, related individual cases into the above-captioned

consolidated action.  On February 25, 2019, Judge Koeltl granted the government's motion to intervene and to stay this consolidated action until May 31, 2019.  On May 30, 2019, Judge Koeltl granted the government's motion to extend the stay until October 31, 2019.

On August 22, 2019, a grand jury in the United States District Court for the Northern District of Illinois returned a sealed 14-count indictment (the "Indictment"), charging three current and former JPMorgan precious metals traders—Gregg Smith, Michael Nowak, and Christopher Jordan—with conspiracy to conduct or participate in an enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); conspiracy to commit price manipulation, bank fraud, wire fraud affecting a financial institution, commodities fraud, and spoofing, in violation of 18 U.S.C. § 371; bank fraud, in violation of 18 U.S.C. § 1344(1); and wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343.  (Indictment ¶¶ 21, 44, 51, 54, 57, 59, 61, 63, 65 & 67, *United States v. Smith*, Case No. 19 CR 669, Dkt. No. 1 (N.D Ill. Aug. 22, 2019) ("Indictment").)  The Indictment also charged Nowak and Smith with attempted price manipulation, in violation of 7 U.S.C. § 13(a)(2); commodities fraud, in violation of 18 U.S.C. § 1348(1); and spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2).  (*Id.* ¶¶ 51, 54, 69, 71, 73 & 75.)

According to the Indictment, beginning in or around May 2008 and continuing until at least in or around August 2016, Smith, Nowak, and Jordan, together with their co-conspirators, placed orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution, including in an attempt to

artificially affect prices and to profit by deceiving other market participants. (*Id.* ¶¶ 25, 44(e), 73, 75.) The Indictment alleges, among other things, that Smith, Nowak, and Jordan and their co-conspirators placed one or more orders for precious metals futures contracts on one side of the market which, at the time Smith, Nowak, and Jordan and their co-conspirators placed the orders, they intended to cancel before execution. (*Id.* ¶ 25(b).) By placing these orders for precious metals futures contracts, Smith, Nowak, and Jordan created the false appearance of substantial supply or demand in order to fraudulently induce other market participants to react to their deceptive market information. (*Id.* ¶¶ 25(f)-(k), 63, 65.) This increased the likelihood that one or more of their opposite-side orders would be filled by other market participants, allowing Smith, Nowak, and Jordan and their co-conspirators to generate trading profits and avoid losses for themselves and other members of the precious metals desk at "Bank A," the precious metals desk itself, and, ultimately, Bank A. (*Id.* ¶ 25(j).)

On September 16, 2019, Smith, Nowak, and Jordan were arrested, and the Indictment was unsealed. On October 22, 2019, Nowak and Smith were arraigned before U.S. District Court Judge Edmond E. Chang, and on October 25, 2019, Jordan filed a waiver of his appearance at an arraignment.

On November 14, 2019, a grand jury in the United States District Court for the Northern District of Illinois returned a Superseding Indictment that incorporated the allegations in the original Indictment and added one defendant, Jeffrey Ruffo. *United States v. Smith*, Case No. 19 CR 669, Dkt. No. 52 (N.D Ill. Nov. 14, 2019)

("Superseding Indictment").  Ruffo is a former JPMorgan precious metal salesperson, and the Superseding Indictment charged him with conspiracy to conduct or participate in an enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); conspiracy to commit price manipulation, bank fraud, wire fraud affecting a financial institution, commodities fraud, and spoofing, in violation of 18 U.S.C. § 371.  Among other things, the Superseding Indictment alleged that one of the reason the defendants and their co-conspirators engaged in their deceptive trading activity was to benefit Ruffo's hedge fund clients.  (Id. ¶ 26(l).)  On December 5, 2019, Ruffo made his initial appearance and was arraigned.

On November 19, 2019, Judge Koeltl granted the government's second motion to extend the stay in this consolidated action and extended it until June 30, 2020. The Court also directed the parties to report back to the Court by June 23, 2010 as to whether the stay should be continued beyond June 30, 2020.

Since Judge Koeltl's second extension of the stay in this consolidated action, the *Smith* case has been scheduled for trial beginning on April 5, 2021.  Despite the recent disruptions due to the COVID-19 pandemic, the parties in *Smith* are focused on moving forward with trial on that date.

## DISCUSSION

### I.    A Stay is Warranted through the Resolution of the Criminal Case

This Court has inherent authority to enter a stay in this consolidated action, deriving from the broader power inherent in every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants."  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).   When

considering whether to stay a civil action pending the resolution of a criminal case, courts in the Second Circuit consider six factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012) (quotation omitted).  Each of these factors supports extending the stay in this case.

*Overlap of issues between the civil and criminal cases*.  The Superseding Indictment and the complaints filed in this consolidated civil action arise out of substantially the same underlying conduct and allege the same wrongdoing—namely, manipulation of the markets for precious metals futures contracts.  Thus, the substantial overlap between the civil and criminal matters weighs in favor of a stay.  *See Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues.") (quotation omitted).

*Status of the criminal case*.  Smith, Nowak, Jordan, and Ruffo are charged in the Superseding Indictment, but are not (as of yet) named explicitly in the complaints filed in this consolidated action.  The complaints filed in this case, however, do identify "John Does 1-10" as defendants and describes them as "other precious metals traders employed by Defendant JPM that participated in, facilitated, and assisted with the manipulation and unlawful conduct alleged herein."  (*Cognata* Complaint ¶ 13.)  It is a near-certainty, therefore, that Smith, Nowak, Jordan, and Ruffo are four

of the individuals included in John Does 1-10.  "The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter."  *Volmar Distributors*, 152 F.R.D. at 39; *see also Louis Vuitton*, 676 F.3d at 101 (recognizing that indictment in parallel criminal proceeding "supported the entry of a stay"); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Meek, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted" in the criminal case because "the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations.").  The status of the criminal case, and the likelihood that the defendants charged in the Superseding Indictment will be named explicitly in this consolidated action (even if they are only "John Does" for the time being) weigh in favor of extending the stay.

     *The interests of the plaintiffs*.  The plaintiffs in this case do not oppose the extension of the stay, but rather they want to extend the stay for only three months. To the extent they claim any prejudice by an extension of the stay through the end of the related criminal prosecution, their argument is undercut by the fact that their civil action is entirely based on the government's investigation.  The first complaint filed in this consolidated action—the *Cognata* Complaint—was filed on November 7, 2018, one day after the Department of Justice publicly announced the guilty plea of John Edmonds, a former precious metals trader at JPMorgan.  Edmonds pleaded guilty to one count of commodities fraud, and one count of conspiracy to commit wire

fraud, commodities fraud, commodities price manipulation, and spoofing, *see* Information, *United States v. John Edmonds*, No. 3:18 CR 239 (RNC) (D. Conn. Oct. 9, 2018) ("Edmonds Information"), and Edmonds is identified in the Superseding Indictment as a co-conspirator of Smith, Nowak, and Jordan, *see* Superseding Indictment ¶ 19. The *Cognata* Complaint's heavy reliance on the government's case against Edmonds is clearly demonstrated by, among other things, the fact that the complaint was filed the day after Edmonds pled guilty and that the only example of Edmonds' spoofing in the *Cognata* Complaint is the same example contained in the Information filed against him—down the millisecond for the times that certain orders were placed. (*Compare Cognata* Complaint ¶¶ 34-35 *with* Edmonds Information ¶¶ 8-9.) To the extent, therefore, that the plaintiffs believe they would suffer any prejudice by extending the stay through the resolution of the criminal case, that is surely outweighed by the benefits that will accrue to the plaintiffs from both the additional evidence that may come to light in the government's criminal case as well as the narrowing of issues in dispute in this consolidated civil action. *See In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2002 WL 31729501, at *8 (S.D.N.Y. Dec. 5, 2002) ("The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation."). Extending the stay in this consolidated action through the end of the criminal case in *United States v. Smith* will not prejudice the plaintiffs in this consolidated action.

*The interests of the defendants*.   The defendants presently named in this case—
JPMorgan and John Edmonds—do not oppose the government's request to extend the
stay.   In addition, as discussed above, the defendants in the criminal case (Smith,
Nowak, Jordan, and Ruffo) are very likely four of the John Does 1-10 that are also
listed in the complaints in this consolidated action.   If the stay is not extended, and
Smith, Nowak, Jordan, and Ruffo are added as defendants (as they surely will be),
the lack of a stay may undermine their Fifth Amendment right against self-
incrimination.   *See SEC v. Treadway*, No. 04 CIV.3464 VM JCF, 2005 WL 713826, at
*4 (S.D.N.Y. Mar. 30, 2005) ("[I]n the absence of a stay, [defendants] are faced with
the dilemma of making potentially incriminating admissions during discovery or
asserting their Fifth Amendment rights, on the basis of which the civil jury can draw
an adverse inference."); *SEC v. Dresser Indus.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980)
("Other than where there is specific evidence of agency bad faith or malicious
governmental tactics, the strongest case for deferring civil proceedings until after
completion of criminal proceedings is where a party under indictment for serious
offense is required to defend a civil or administrative action involving the same
matter.").   The lack of any opposition by the currently-identified defendants, and the
interests of prospective defendants who are very likely to be added to this case, weigh
in favor of extending the stay.

*The interests of the Court*.   When evaluating this factor, courts often look to the
"convenience of the court in the management of its cases" as well as the "efficient use
of judicial resources."   *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573,

576 (S.D.N.Y. 2001) (internal quotation marks and citations omitted).  This consolidated civil action is "likely to benefit to some extent from the Criminal Case no matter its outcome."  *SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus.*, No. 11-cv-6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012).  By extending the stay of this consolidated action, the Court can "avoid a duplication of efforts and a waste of judicial time and resources."  *SEC v. Shkreli*, No. 15-cv-7175 (KAM), 2016 WL 1122029, at *6 (E.D.N.Y. Mar. 22, 2016) (citation omitted).  The criminal case very likely will resolve issues of fact common to this consolidated civil action and may reduce the number of issues to be decided in any subsequent proceedings.  *See SEC v. Contorinis*, No. 09-CV-1043 (RJS), 2012 WL 512626, at *3 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding.").  Further—and particularly if the requested stay is extended through the termination of the criminal proceedings—resolution of the criminal case could narrow the scope of discovery and other issues in this civil litigation, which would benefit all parties, as well as judicial economy.  *See, e.g., SEC v. Blaszczak*, No. 17-CV-3919 (AJN), 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018) ("The Criminal Case will resolve issues of fact common to the civil case and may reduce the number of issues to be decided in subsequent proceedings in this case."); *State Farm Lloyds v. Wood*, No. CIV A H-06-503, 2006 WL 3691115, at *3 (S.D. Tex. Dec. 12, 2006) ("The outcome of the criminal proceedings may guide the parties in settlement discussions and potentially

-10-

eliminate the need to litigate some or all of the issues in this case.").  The efficient use of judicial resources, therefore, weighs in favor of extending the stay through the resolution of the related criminal prosecution.

*The public interest.*  "[T]he public's interest in the effective enforcement of the criminal law is the paramount public concern."  *Shkreli*, 2016 WL 1122029, at *7.  As is true here, "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here." *Transworld*, 886 F. Supp. at 1140; *see also SEC v. McGinnis*, 161 F. Supp. 3d 318, 324 (D. Vt. 2016) (granting stay of SEC action in part because the "public's interest in the integrity of the [parallel] criminal case is entitled to precedence over the civil litigant" (quotation omitted)).  If, as discussed above, the four defendants in the criminal case (Smith, Nowak, Jordan, and Ruffo) are added as named defendants to this action (as opposed to being simply John Does right now), they may seek discovery, and "a stay of discovery is often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a potential criminal prosecution which parallels the subject matter of the civil action."  *Treadway*, 2005 WL 713826, at *4; *see also Morris v. Am. Fed'n of State, Cnty. & Mun. Emps.*, No. 99-CV-5125, 2001 WL 123886, at *2 (S.D.N.Y. Feb. 9, 2001) ("The public has an interest in ensuring the criminal discovery process is not subverted.").  Extending the stay through the resolution of the criminal case would serve the public's interest in the effective enforcement of the criminal laws without interference from the civil discovery process.

## **CONCLUSION**

For these reasons, the Motion of the United States for a Third Extension of the Stay seeking to stay this consolidated action through the conclusion of the related criminal prosecution in *United States v. Smith*, Case No. 19 CR 669 (N.D. Ill.) should be granted.

Dated: June 23, 2020

Respectfully submitted,

ROBERT A. ZINK
Chief, Fraud Section

By:   /s/ *Matthew F. Sullivan*
Avi Perry, Assistant Chief
Matthew F. Sullivan, Trial Attorney
Criminal Division
U.S. Department of Justice
1400 New York Ave., NW
Washington, DC 20530
(203) 821-3797 (Perry)
(202) 353-6200 (Sullivan)
Avi.Perry@usdoj.gov
Matthew.Sullivan2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Mathew F. Sullivan, hereby certify that on June 23, 2020, I electronically filed the foregoing Motion of the United States for a Third Extension of the Stay with using the CM/ECF electronic filing system, which will automatically send a Notice of Electronic Filing to all parties.

 /s/ *Matthew F. Sullivan*
Matthew F. Sullivan
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice