**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE JPMORGAN PRECIOUS METALS SPOOFING LITIGATION | Case No.: 1:18-cv-10356 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Hon. Gregory H. Woods |


**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**WITH DEFENDANT JPMORGAN CHASE & CO.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 3

I.      THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER
        RULE 23(e)(2) ................................................................................................................. 3

        A.      The Preliminary Approval Standard ................................................................... 3

        B.      The Settlement Is Procedurally Fair .................................................................. 4

                1.      The Class Has Been Adequately Represented ....................................... 4

                2.      The Settlement is the Product of Arm's Length Negotiations ............ 5

        C.      The Settlement Is Substantively Fair ................................................................. 7

                1.      The Substantial Relief Provided by the Settlement and the Complexity,
                        Costs, Risks, and Delay of Trial and Appeal Favor the Settlement ......... 8

                2.      The Distribution Plan Provides an Effective Method for Distributing
                        Relief, Satisfying Rule 23(e)(2)(c)(ii) ..................................................... 13

                3.      The Requested Attorneys' Fees and Other Awards are Limited to Ensure
                        that the Settlement Class Receives Adequate Relief ............................. 15

                4.      There Are No Unidentified Agreements That Impact the Adequacy of the
                        Relief for the Settlement Class .............................................................. 16

                5.      The Settlement Treats the Settlement Class Equitably and Does Not
                        Provide Any Preferences ........................................................................ 16

                6.      The *Grinnell* Factors Not Expressly Addressed Above Also Support
                        Approval of the Settlement .................................................................... 17

II.     THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED
        CLASS .......................................................................................................................... 20

        A.      The Settlement Class Meets the Rule 23(a) Requirements ............................. 20

                1.      Numerosity ............................................................................................ 20

                2.      Commonality .......................................................................................... 20

                3.      Typicality ............................................................................................... 21

                4.      Adequacy ................................................................................................ 21

        B.      The Class May Be Certified Under Rule 23(b)(3) ........................................... 22

                1.      Predominance ........................................................................................ 22

                2.      Superiority ............................................................................................. 23

III.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN
        AND A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR ......................... 23

IV.     THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT........25

V.      PROPOSED SCHEDULE OF EVENTS.....................................................................25

CONCLUSION.............................................................................................................................25

APPENDIX A...............................................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Bolivar v. FIT Int'l Grp. Corp.*,
  No. 12-cv-781, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019) ................................................ 12

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) ................................................................................................... 22

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................................ 7, 8

*Dial Corp. v. News Corp.*,
  317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................................................... 15

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) .......................................................................................... 13

*Harry v. Total Gas & Power N. Am., Inc.*,
  889 F.3d 104 (2d Cir. 2018) ................................................................................................... 12

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 216 (2d Cir. 1987) ................................................................................................... 15

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ......................................................................................... 8

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-md-1775 (JG)(VVP), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ......................... 5

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-md-1775 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ........................ 22

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ................................................................................................... 20

*In re Amaranth Nat. Gas Commodities Litig.*,
  269 F.R.D. 366 (S.D.N.Y. 2010) ..................................................................................... 21, 23

*In re Amaranth Nat. Gas Commodities Litig.*,
  No. 07-cv-6377 (SAS), 2012 WL 2149094 (S.D.N.Y. Jun. 11, 2012) ................................... 15

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  MDL No. 1500, 02-cv-5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................. 19

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............................................................................. 4, 6, 7

*In re Bisys Sec. Litig.*,
  No. 04-cv-3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007)....................................15

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  No. 12-md-2330, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)..............................................16

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ....................................................................................... 5, 11

*In re Dairy Farmers of Am., Inc.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ........................................................................................15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)......................................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).......................................................................................................21

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
  357 F.3d 800 (8th Cir. 2004) ...................................................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 439 (S.D.N.Y. 2004) .............................................................................................19

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................. 4, 11, 12, 17

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ...............................................................................................20

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................................9

*In re Merrill, BofA, & Morgan Stanley Spoofing Litig.*,
  No. 19 Civ. 6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) .....................................10

*In re Michael Milken and Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) .................................................................................................7

*In re Nat. Gas Commodities Litig.*,
  231 F.R.D. 171 (S.D.N.Y. 2005) ........................................................................................20, 22

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1977) ...........................................................................................7, 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................................passim

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) .................................................. 3

*In re Priceline.com, Inc. Sec. Litig.*,
  3:00-cv-1884 (AVC), 2007 WL 2115592 (D. Conn. July 20, 2007) ........................................ 15

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ......................................................................................... 10

*In re Tronox Inc.*,
  No. 14-cv-5495 (KBF), 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) .................................. 19

*In re Visa Check/Mastermoney Antitrust Litig.*,
  192 F.R.D. 68 (E.D.N.Y. 2000) ................................................................................................. 12

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................................................ 12

*Kelen v. World Fin. Network Nat. Bank*,
  302 F.R.D. 56 (S.D.N.Y. 2014) ................................................................................................... 6

*Kohen v. Pacific Inv. Mgmt Co. LLC*,
  244 F.R.D. 469 (N.D. Ill. 2007) ................................................................................................ 23

*Meredith Corp. v. SESAC LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ......................................................................................... 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ................................................................................................................... 24

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ........................................................................................................ 8

*Ploss v. Kraft Foods Grp., Inc.*,
  431 F. Supp. 3d 1003 (N.D. Ill. 2020) ................................................................................. 21, 22

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................... 5

*Soberal-Perez v. Heckler*,
  717 F.2d 36 (2d Cir. 1983) ........................................................................................................ 23

*Velez v. Novartis Pharms. Corp.*,
  No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................ 4, 5, 17, 23

*Weigner v. City of New York*,
    852 F.2d 646 (2d Cir. 1988)............................................................................ 23

## **Rules**

FED. R. CIV. P.  23(e)(1) ........................................................................................ 3

FED. R. CIV. P. 23(a)(2) ........................................................................................ 20

FED. R. CIV. P. 23(a)(4) ...................................................................................... 4. 21

FED. R. CIV. P. 23(e)(2)(A) ................................................................................... 4

FED. R. CIV. P. 23(e)(2)(B) ................................................................................... 4

FED. R. CIV. P. 23(e)(2)(C) et seq. .................................................................... 7, 8

FED. R. CIV. P. 23(e)(2)(D) ............................................................................ 7, 8, 16

FED. R. CIV. P. 23(g) ....................................................................................... 5, 21

Rule 23(a)........................................................................................................... 20

Rule 23(a)(3)...................................................................................................... 21

Rule 23(b)(3)................................................................................................. 22, 23

Rule 23(e).......................................................................................................... 4

Rule 23(e)(3)...................................................................................................... 7

## **Other Authorities**

4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020)................................ 6

4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020)................................ 13

JOSEPH M. MCLAUGHLIN, 2 MCLAUGHLIN ON CLASS ACTIONS § 6:23 (17th ed. 2020).............. 14

MANUAL FOR COMPLEX LITIGATION (FOURTH)  § 21.631 (2004) ................ 16

Class Plaintiffs[1] move under Rule 23 of the Federal Rules of Civil Procedure for preliminary approval of a $60,000,000 Settlement with JPMorgan.

## PRELIMINARY STATEMENT

This is a class action alleging JPMorgan violated the Commodity Exchange Act, 7 U.S.C. §§ 1 *et. seq.* ("CEA"), and the common law by intentionally manipulating the prices of Precious Metals Futures traded on the Commodity Exchange Inc. ("COMEX") and the New York Mercantile Exchange ("NYMEX") and Options on Precious Metals Futures from at least March 1, 2008 through August 31, 2016 (the "Class Period"). Specifically, Class Plaintiffs alleged that JPMorgan utilized a manipulative technique called "spoofing," which involved purposefully placing orders with the intent to cancel those orders prior to execution to send false and illegitimate supply and demand signals to an otherwise efficient market.[2]

Class Plaintiffs and JPMorgan have reached an agreement to settle this Action in exchange for a $60,000,000 cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class and the dismissal of all claims against JPMorgan and the Individual Defendants. The Parties reached this Settlement following months of hard-fought, arm's length negotiations supervised by an experienced mediator, the exchange of substantial amounts of transaction data and other information, extensive presentations on liability and damages, and months of additional negotiations over the specific terms of the Settlement Agreement. Class Plaintiffs and Lead Counsel, Lowey Dannenberg, P.C. ("Lowey" or "Lead Counsel") respectfully submit that the proposed Settlement is an excellent result for the Settlement Class.

---

[1] Unless otherwise noted, capitalized terms not defined herein have the same meaning as in the Stipulation and Agreement of Settlement dated September 1, 2021 (the "Agreement" or "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Vincent Briganti ("Briganti Decl."), executed on November 19, 2021 and filed herewith. Unless otherwise noted, internal citations and quotation marks are omitted and ECF citations are to the docket.

[2] This Memorandum assumes familiarity with the factual allegations and procedural history of this Action. A detailed description of the factual allegations and procedural history is contained in the Briganti Decl.

The Settlement is separate from, and in addition to, JPMorgan's settlements with the U.S. Department of Justice ("DOJ"), the United States Attorney's Office for the District of Connecticut ("USAOC"), and the Commodity Futures Trading Commission ("CFTC").  The Settlement significantly augments any recoveries that Class Members may obtain from the DOJ and USAOC's victim compensation payment amount ("VCPA")[3] and ensures that eligible Settling Class Members will be compensated for damages caused by JPMorgan's alleged spoofing in the Precious Metals Futures and Options on Precious Metals Futures market.

The Settlement satisfies all requirements for preliminary approval.  First, the Settlement is procedurally fair, as Class Plaintiffs and Lead Counsel are adequate representatives for the Settlement Class, and the Settlement itself resulted from hard-fought arm's length negotiations with JPMorgan.  Second, the terms of the Settlement are substantively fair, providing significant relief for eligible Class Members—over and above the relief that may be available through the VCPA—and fully resolving the litigation against all Defendants.  The Settlement proceeds will be disbursed pursuant to a Distribution Plan designed with the assistance of experts that is similar to such plans approved in other complex class action settlements involving futures and options transactions.  Third, the Court may certify the Settlement Class under Federal Rules of Civil Procedure 23(a) and (b)(3).  Finally, Lead Counsel have prepared a robust Class Notice program that will fully apprise Class Members of their rights and options.

Accordingly, Class Plaintiffs respectfully ask that the Court enter the accompanying [Proposed] Preliminary Approval Order, which will: (a) preliminarily approve the Settlement subject to later, final approval; (b) conditionally certify a Settlement Class with respect to the claims against JPMorgan; (c) preliminarily approve the proposed Distribution Plan (Briganti Decl.

---

[3] *See* Deferred Prosecution Agreement ("DPA") ¶ 7, *U.S. v. JPMorgan Chase & Co.*, No. 20-cr-00175 (D. Conn. Sep. 29, 2020), ECF No. 11.

Ex. 6); (d) appoint Class Plaintiffs as representatives of the Settlement Class; (e) appoint Lowey as Class Counsel; (f) appoint Citibank, N.A. ("Citibank") as the Escrow Agent for the Settlement; (g) appoint A.B. Data, Ltd. ("A.B. Data") as the Settlement Administrator; (h) approve the proposed forms of Class Notice to the Settlement Class (*id.*, Exs. 3-4) and the proposed Class Notice plan (*id.*, Ex. 2); (i) set a schedule leading to the Court's evaluation of whether to finally approve the Settlement, including the date, time, and place of the Fairness Hearing; and (k) stay all proceedings in the Action except those relating to approval of the Settlement.

## ARGUMENT

## I.  THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)

### A.  The Preliminary Approval Standard

The Court may preliminarily approve and direct notice of the proposed Settlement if it is likely that the Court, after a hearing, will find the Settlement satisfies FED. R. CIV. P. 23(e)(2) and the proposed Class may be certified. FED. R. CIV. P. 23(e)(1); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("*Payment Card*") (analyzing the Rule 23(e)(2) standards to be applied at preliminary approval). In conducting a preliminary approval inquiry under Rule 23, a court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014); *see also Payment Card*, 330 F.R.D. at 30 n.25. The proposed Settlement merits preliminary approval. It is entitled to an initial presumption of fairness and adequacy as it is the result of arm's length negotiations by experienced counsel supervised by an independent mediator. Further, the Settlement provides a significant benefit for the Settlement Class in the face of substantial costs and risks associated with continued litigation.

B.      **The Settlement Is Procedurally Fair**

To assess procedural fairness, Rule 23(e)(2) requires the Court to find that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(A)-(B).  Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

1.      **The Class Has Been Adequately Represented**

Adequate representation under Rule 23(e)(2)(A) (and 23(a)(4))[4] requires that the "interests . . . served by the Settlement [are] compatible with" those of settlement class members. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 110 (2d Cir. 2005) ("*Wal-Mart Stores*").  "Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim." *Id*. at 106-07.

Class Plaintiffs' interests are aligned with those of the Settlement Class.  Class Plaintiffs purchased hundreds of Precious Metals Futures contracts or Options on Precious Metals Futures contracts during the Class Period.  *See, e.g.,* ECF No. 1 (Complaint) at ¶ 9.  JPMorgan's alleged manipulation caused artificial market prices not just for Class Plaintiffs, but for the entire market for Precious Metals Futures.  *Id.* ¶¶ 28-35.  Consequently, the interests of Class Plaintiffs in proving liability and damages are entirely aligned with those of the Settlement Class, and there are

---

[4] Courts analyze the adequacy of representation requirement of Rule 23(e)(2)(A) using the same considerations for representative adequacy under FED. R. CIV. P. 23(a)(4).  *See Payment Card*, 330 F.R.D. at 30 n.25 ("This adequate representation factor [under Rule 23(e)(2)(A)] is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context.  As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor."); *accord In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019).

no conflicting interests among Class Plaintiffs and the Settlement Class. *See Wal-Mart Stores*, 396 F.3d at 110-11 (class representatives are adequate if their injuries encompass those of the class they seek to represent); *Payment Card,* 330 F.R.D. at 31 ("Defendants' imposition of 'supracompetitive interchange and merchant-discount fees on purchases using Visa- and/or Mastercard-Branded cards, and anti-steering and other restraints'" similarly injured class representatives and absent class members).

Courts evaluating adequacy of representation also consider the adequacy of plaintiffs' counsel. *Payment Card*, 330 F.R.D. at 30 (considering whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."); *accord* FED. R. CIV. P. 23(g).  Lowey serves as Lead Counsel, having led the prosecution of this action from its inception and negotiated this Settlement.  Lowey's extensive class action and commodities experience is strong evidence that the Settlement is procedurally fair.  *See* Briganti Decl., Ex. 7 (firm resume); *see also In re Currency Conversion Fee Antitrust Litig*., 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive" experience of counsel in granting final approval of settlement); *see also Shapiro v. JPMorgan Chase & Co*., No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at \*2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair).  In addition, Plaintiffs' Counsel include firms with extensive experience in complex class actions, and their direct assistance in prosecuting these claims with Lowey and support of the Settlement reinforce the adequacy of counsel in this case.

### 2.   The Settlement is the Product of Arm's Length Negotiations

Procedural fairness is presumed where a settlement is "the product of arm's length negotiations between experienced and able counsel on all sides." *In re Air Cargo Shipping Servs. Antitrust Litig*., No. 06-md-1775 (JG)(VVP), 2009 WL 3077396, at \*7 (E.D.N.Y. Sept. 25, 2009); *see also* Fed R. Civ. P. 23(e)(2)(B) (courts must consider whether settlement "was negotiated at

arm's length").  That presumption applies here, as the Settlement was negotiated by knowledgeable counsel for Class Plaintiffs and Defendant, each with a deep understanding of the case's risks and the Settlement's benefits.  JPMorgan, for its part, is represented by skilled counsel from a top law firm with extensive experience in litigating CEA and class action cases. *See* Briganti Decl., ¶ 25. The involvement of an experienced and qualified mediator further affirms the fairness of the process. *See Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) ("[A] mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ("Evidence of a truly adversarial bargaining process helps assuage this concern [of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third party mediator").

Settlement discussions, which began in earnest in May 2020, consisted of a series of meetings, telephonic conferences, correspondence, and two extensive day-long formal mediation sessions supervised by the Honorable Diane M. Welsh (Ret.), an experienced mediator.  The Parties agreed to the selection of Judge Welsh to serve as mediator in May 2020 and participated in two mediation sessions on November 23, 2020 and December 9, 2020 that concluded without initially reaching a settlement. Briganti Decl., ¶ 18.  After Judge Welsh had facilitated several more months of arm's length negotiations between the Parties, on February 19, 2021, she presented the Parties with a mediator's proposal for a $60 million settlement to settle the Action. *Id.,* ¶ 19.

Prior to negotiating the Settlement, Class Plaintiffs and Lead Counsel were well-informed about the strengths and weaknesses of their claims, including JPMorgan's arguments made during the mediation sessions. *Id.,* ¶¶ 16-19.  Lead Counsel also had the benefit of public disclosures detailing the government investigation into JPMorgan's alleged misconduct and economic analysis

performed by their experts. *Id.,* ¶¶ 12-15, 21.  Moreover, as part of the mediation and settlement process, Lead Counsel negotiated the right to obtain Mediation Information from JPMorgan, which consisted of, *inter alia*, Precious Metals Futures or Options of Precious Metals Futures data for JPMorgan transactions for the duration of the Class Period. *Id.,* ¶ 17.  The Mediation Information gave Lead Counsel additional information to evaluate JPMorgan's representations during settlement negotiations and the adequacy of the proposed relief. *Id.,* ¶¶ 17, 21.

Lead Counsel believe Class Plaintiffs' claims have substantial merit but acknowledge the expense and uncertainty of continued litigation against JPMorgan.  In recommending that the Court approve the Settlement, Lead Counsel have accounted for the uncertain outcome and the risks of further litigation and believe the Settlement confers significant benefits on the Settlement Class in light of the circumstances here.  Accordingly, there is "a strong initial presumption that the compromise is fair and reasonable." *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1977) (observing that "great weight" is given to advice of experienced counsel).

## C. The Settlement Is Substantively Fair

To assess the Settlement's substantive fairness, the Court considers whether "the relief provided for the class is adequate," accounting for: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C).  The Court also considers whether the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).  Second Circuit courts also apply the factors provided in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.

1974) ("*Grinnell*"),[5] which overlap with Rule 23(e)(2)(C)-(D).  *See Payment Card*, 330 F.R.D. at 29.  Rule 23(e)(2)(C)-(D) and *Grinnell* support preliminary approval of the Settlement.

### 1. The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement

To determine whether a settlement provides adequate relief to the class, the Court must evaluate "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i), "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Payment Card*, 330 F.R.D. at 36.  Satisfying this factor necessarily "implicates several *Grinnell* factors, including: (i) the complexity, expense, and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id*.  Relatedly, to assess whether the recovery is within the range of reasonableness, courts weigh the settlement relief against the strength of the plaintiff's case, including the likelihood of a recovery at trial. *See Grinnell*, 495 F.2d at 463.  This approach "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  As a result, "[d]ollar amounts [in class settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).

This Settlement represents an excellent recovery for the Class and a reasonable hedge against the risks of pursuing the claims against JPMorgan to trial. *PaineWebber*, 171 F.R.D. at 125

---

[5] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See Grinnell*, 495 F.2d at 463.

(stating "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). It provides "the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). If approved, this Settlement will provide $60,000,000, less any authorized fees, costs and expenses. Based on information currently available, Lead Counsel in consultation with their experts have preliminarily estimated class-wide damages of $915 million, assuming Class Plaintiffs succeed on all triable issues. Briganti Decl., ¶ 21. The Settlement recovery is approximately 6.6% of estimated class-wide damages. *See In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) ("A recovery of between approximately 3% and 7% of estimated damages is within the range of reasonableness for recovery in the settlement of large securities class actions."); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 315 (S.D.N.Y. 2020) (approving settlement of approximately 10% of highest damages estimate, where the New York Attorney General obtained an injunction for the same alleged conduct); *Payment Card*, 330 F.R.D. at 49 (approving settlement in which the settlement amount represented "may be only several months of interchange fees"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003) (collecting cases where courts approved settlements achieving single-digit percentages of potential recoveries).

Evaluating the Settlement Amount against the recovery the DOJ and USAOC received also demonstrates its reasonableness. *See* Briganti Decl. ¶¶ 12-15. (describing government settlements). According to the DPA, the DOJ and USAOC estimated that JPMorgan's spoofing caused at least $200 million in losses to participants in the Precious Metals Futures market. *See* DPA, ¶¶ 4.a., 7, 15 & Ex. A ¶ 32. Class Plaintiffs contend JPMorgan's spoofing of Precious Metal Futures caused greater losses, and as a result of Class Plaintiffs' and Lead Counsel's efforts, the

total sum available for compensation to those market participants harmed by JPMorgan's spoofing has been increased by approximately 30% more than the amount provided under the VCPA. While some Class Members may be eligible to receive proceeds from the VCPA distributed by the DOJ and USAOC, it is unclear to Class Plaintiffs if all Class Members may be eligible to recover. The Settlement provides a significant enhancement to Class Members, providing recovery for those who might not be eligible to receive money from the VCPA, and increasing the total percentage of damages recovered for the Class.

The reasonableness and adequacy of the Settlement is further supported by the significant litigation risks that Class Plaintiffs face, risks that are further heightened by the complexity of the market for Precious Metals Futures and Options on Precious Metals Futures and the claims at issue. Commodities cases are inherently complicated, expensive, and risky to litigate. *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("claims of commodity price manipulation in violation of the CEA . . . [are] notoriously difficult to prove . . . .").

But for the Settlement, Class Plaintiffs would have faced the potential for an adverse ruling once the stay was lifted and JPMorgan filed a motion to dismiss. JPMorgan would likely have challenged, among other things, whether the complaint plausibly stated a claim, and whether any such claims were barred by any of its various defenses. One or more of these arguments could have terminated the case. *See, e.g.*, *In re Merrill, BofA, & Morgan Stanley Spoofing Litig.*, No. 19 Civ. 6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) (dismissing CEA spoofing claims pursuant to Rule 12(b)(6)). While Class Plaintiffs believe they would have prevailed on any such motion, it would have been just the first hurdle to prevailing on the merits. JPMorgan likely would have raised challenges relating to class certification, summary judgment, and motions *in limine*, and would have vigorously contested issues during trial and in post-trial appeals.

The nature and complexity of the financial products and markets involved, and the time over which the alleged misconduct occurred, make this case particularly complex and risky. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693  (finding that the "complex issues of fact and law related to the sale of GSE bonds at different points in time" weighed in favor of preliminary approval); *see In re Currency Conversion Fee*, 263 F.R.D. at 123 ("the complexity of Plaintiffs' claims *ipso facto* creates uncertainty").  Based on Lowey's experience in commodities and other complex class action cases, discovery would be lengthy and costly absent the Settlement. Prosecuting this action would have required the analysis of years' worth of complex financial data, the creation of sophisticated damage models to explain and prove the nature of JPMorgan's alleged misconduct, and the deciphering of intra-firm communications and documents, including arcane and jargon-filled chat room transcripts.  Given the highly technical nature of the alleged spoofing and the data-rich environment relating to futures trading, it is likely that discovery costs in this Action would be substantial.  JPMorgan would also likely use fact and expert discovery to assert factual or legal flaws in Class Plaintiffs' claims.  *See In re GSE Bonds*, 414 F. Supp. 3d at 694 ("Given that multiple remaining defendants contend that they can present a strong case against plaintiffs after discovery, there is no guarantee that plaintiffs will be able to prove liability.").

Litigation costs would have been amplified by the involvement of experts.  Expert discovery would have followed from the complex subject matter of the Action, which in turn would have led to *Daubert* motion practice by both sides.  Class Plaintiffs would have needed to retain additional experts to provide complex econometric and industry analyses, adding to the cost and duration of the case and triggering a "battle of the experts."  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (experts "tend[] to increase both the cost and duration of litigation").  "In this 'battle of experts,' it is virtually impossible to predict

with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).

Even if Class Plaintiffs were to establish Defendants' liability, they would also bear the risk of proving actual damages. *See, e.g.*, *Bolivar v. FIT Int'l Grp. Corp.*, No. 12-cv-781, 2019 WL 4565067, at *1 (S.D.N.Y. Sept. 20, 2019) ("it is Plaintiffs who bear the burden of establishing their claimed damages to a reasonable certainty" in relation to a class action alleging commodity law violations among other claims). Even where the government has secured a criminal guilty plea, civil juries have found no damages. *Compare* Order Instituting Proceeding Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions, *In the Matter of: Total Gas & Power North America, Inc. and Therese Tran*, Docket No. 16-03 (CFTC Dec. 7, 2015) (fining respondent $3.6 million for manipulating natural gas prices), *with Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 114 (2d Cir. 2018) ("Plaintiffs have failed to provide facts sufficient to allege a plausible connection between their trading and [defendant's conduct]."); *see also Special Verdict on Indirect Purchases, In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal. Sept. 3, 2013), ECF No. 8562.

The risk of maintaining a class through trial is another important consideration in evaluating the Settlement. Though present in every class action, this risk is significant where Defendants are likely to challenge class certification, including by petitioning for an interlocutory appeal under Rule 23(f). *In re GSE Bonds*, 414 F. Supp. 3d at 694 (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated"). Even if the Court were to certify a litigation class, certification can be reviewed and modified at any time. *In re Visa Check/Mastermoney Antitrust*

*Litig.*, 192 F.R.D. 68, 89 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) ("If factual or legal underpinnings of the plaintiffs' successful class certification motion are undermined once they are tested . . . , a modification of the order, or perhaps decertification, might then be appropriate." ); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("While plaintiffs might indeed prevail [on a class certification motion], the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement.")*.*

The $60,000,000 Settlement provides an appropriate balance of the strength of Class Plaintiffs' case against the risks.   The proposed Settlement, if approved, exchanges extensive prosecution costs and a lengthy litigation timeline with certain financial recovery for the Settlement Class, finality as to the Parties, and the preservation of Court time and resources that can be redirected elsewhere.   The above considerations support approval of the Settlement.

### 2.   The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(e)(2)(c)(ii)

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate."  *Payment Card*, 330 F.R.D. at 40.  In addition, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.*

Lowey consulted with industry and economics experts to develop the proposed Distribution Plan.  *See* Briganti Decl., ¶ 35, Ex. 6.  It is structured to be efficient to administer and simple for Settlement Class Members, encouraging participation. *See* WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible").  This distribution method is similar to plans approved in other cases.  *See* Order of Settlement at ¶ 15, *Bouchard v. Gandhi et al.*, No. 1:18-cv-07041 (N.D. Ill. July 30,

2021), ECF No. 153 (involving the alleged spoofing of E-Mini Index Futures and Options on E-Mini Index Futures); Memo Endorsement at ¶ 21, *In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-md-02573 (VEC) (S.D.N.Y. Jun. 15, 2021), ECF No. 536 (relating to alleged manipulation of silver products).  Accordingly, the Distribution Plan should be preliminarily approved.

To receive a portion of the Net Settlement Fund, Class Members will be required to submit a Proof of Claim and Release form ("Claim Form").  The Claim Form is straight-forward and simple, only requiring a claimant to provide certain background information and readily accessible data about their Precious Metals Futures and Options on Precious Metals Futures transactions, including the contract traded, trade date, volume, trade price, the option type, strike price, and premium (if applicable).  *See* Briganti Decl., Ex. 5.  This information is typical of what claim forms in other futures cases have called for.[6]

Substantively, the Distribution Plan allocates the Net Settlement Fund *pro rata* to Authorized Claimants based on an estimate of the impact of JPMorgan's alleged spoofing on market transactions.[7]  *Id.*  If all other factors are held constant, claimants with a higher trading volume can expect a proportionally larger allocation.  While volume is a core part of the distribution framework, the Distribution Plan also incorporates a "Futures Contract Specification Multiplier," which accounts for the frequency and the impact of JPMorgan's alleged spoofing on Precious Metals Futures and Options on Precious Metal Futures.

---

[6] *See* Proof of Claim and Release, *In re Rough Rice Commodity Litig.*, No. 11 Civ. 618, (N.D. Ill. Mar. 4, 2015), ECF No. 164-6 (claim form requiring submission of, *inter alia*, trade date, contract traded, number of contracts, and transaction price for claims process involving futures contracts); *see also* Final Revised Proof of Claim, *In re London Silver Fixing Antitrust Litig.*, Nos. 14 MD 02573 (S.D.N.Y. Aug. 5, 2020),  ECF No. 463-7; Proof of Claim, *Bouchard v. Gandhi et al.*, No. 18 Civ. 7041 (N.D. Ill. Jan. 29, 2021), ECF No. 125-5.

[7] In consultation with Lead Counsel, the Settlement Administrator will implement a reasonable minimum payment for Class Members whose expected distribution based on their *pro rata* fraction is less than the costs of administering the Claim to ensure that the administrative costs of issuing small payments do not burden the Net Settlement Fund while not diverting a substantial portion of the Net Settlement Fund. *See* Joseph M. McLaughlin, 2 MᴄLᴀᴜɢʜʟɪɴ ᴏɴ Cʟᴀss Aᴄᴛɪᴏɴs § 6:23 (17th ed. 2020).

The Distribution Plan satisfies Rule 23(e)(2)(C)(ii).  It ensures that the Settlement does not favor or disfavor any Class Members, and it does not discriminate against, create any limitations, or exclude from payment any persons or groups within the Settlement Class.

### 3.  The Requested Attorneys' Fees and Other Awards are Limited to Ensure that the Settlement Class Receives Adequate Relief

Lead Counsel will limit their attorneys' fee request to no more than one-third of the Settlement Amount ($20 million), which may be paid upon final approval and will be allocated among Plaintiffs' Counsel in proportion to their contributions to the case.[8]  Briganti Decl., Ex. 1 § 4(E)(i); *see In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 216, 223 (2d Cir. 1987).  This fee request is comparable to the fees awarded in other cases of similar size and complexity.  *See, e.g.*, *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 862 (N.D. Ill. 2015) (awarding one-third of $46 million common fund in attorneys' fees); *In re Amaranth Nat. Gas Commodities Litig.*, No. 07-cv-6377 (SAS), 2012 WL 2149094, at *2 (S.D.N.Y. Jun. 11, 2012) (awarding attorneys' fees of 30% on a $77.1 million settlement); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-cv-1884 (AVC), 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (awarding 30% of a $80 million settlement as attorneys' fees); *In re Bisys Sec. Litig.*, No. 04-cv-3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (granting attorneys' fee award of 30% of $65.87 million settlement); *see also Velez v. Novartis Pharms. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." (collecting cases)).  In addition to attorneys' fees, Lead Counsel will seek payment for litigation costs and expenses not to exceed $750,000 and Incentive Awards not to exceed a total of $110,000. *See Meredith Corp. v. SESAC LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015) (reasonable expenses may be reimbursed from the settlement); *Dial Corp. v.*

---

[8] There are no fee-sharing agreements to disclose pursuant to Local Civil Rule 23.1.

*News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (class representatives may be awarded an incentive award for their efforts); *see also* Briganti Decl., Ex. 1 § 4(E)(ii)-(iii).

Lead Counsel will separately file their Fee and Expense Application seeking approval of the requested awards.  That application and all supporting papers will be posted on a website (the "Settlement Website") promptly after filing for Class Members to review prior to the objection deadline.

### 4.   There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Here, the Settlement Agreement sets forth all such terms or specifically identifies all other agreements that relate to the Settlement (namely, the Supplemental Agreement).  *See* Briganti Decl., ¶ 28; Ex. 1, §§ 19(D); 23.  The Supplemental Agreement provides JPMorgan a qualified right to terminate the Settlement Agreement under certain circumstances before final approval.  *Id.*, Ex. 1, § 19(D).  This type of agreement is standard in complex class action settlements and does not impact the fairness of the Settlement.[9]

### 5.   The Settlement Treats the Settlement Class Equitably and Does Not Provide Any Preferences

The Settlement also "treats class members equitably relative to each other."  FED. R. CIV. P. 23(e)(2)(D).  The Distribution Plan provides for a *pro rata* distribution of the Net Settlement Fund among Authorized Claimants, a method this Court has already approved as fair, reasonable, and adequate. *See, e.g.*, *Payment Card*, 330 F.R.D. at 47 (finding that "pro rata distribution scheme

---

[9] *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-2330, 2016 WL 4474366, at *5, 7 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement); *accord* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004) (explaining that "[k]nowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out.").

is sufficiently equitable").  All Class Members would release JPMorgan for claims based on the same factual predicate of this Action.  Where class members have received sufficient notice of the effect of the settlement and judgment, courts have enforced the bar on prosecuting released claims so long as they were based on the identical factual predicate and the class members were adequately represented.  *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800 (8th Cir. 2004) (affirming injunction against prosecution of claim released by a related class action where adequate notice of the release was given, and the class was adequately represented); *Wal-Mart Stores*, 396 F.3d at 112-13 (adopting the analysis of *In re Gen. Am. Life*).  As is customary, the proposed Class Notice provides information on how to opt out of the Settlement; absent opting out, each Class Member will be bound by the release.

Because the Settlement's release and the Distribution Plan do not include any improper intra-class preferences or prejudice, the Court should find that the Settlement satisfies this factor.

6. **The *Grinnell* Factors Not Expressly Addressed Above Also Support Approval of the Settlement**

a. <u>The reaction of the Settlement Class to the Settlement.</u>

Consideration of this *Grinnell* factor is premature prior to the Settlement Class receiving notice of the Settlement. *See In re GSE Bonds*, 414 F. Supp. 3d at 699 n.1.  Nevertheless, Class Plaintiffs are sophisticated investors with significant financial expertise and have assessed the Settlement's benefits. Briganti Decl., ¶ 8.  Their support is probative of the Class Members' likely reaction.[10]

b. <u>The stage of the proceedings.</u>

"[C]ourts encourage early settlement of class actions . . . because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus

---

[10] If any Class Member objects to the Settlement, Lead Counsel will file a response prior to the Fairness Hearing.

resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).  The relevant inquiry for this factor, therefore, is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").  This factor does not require extensive discovery, or indeed any discovery at all, "as long as '[counsel] have engaged in sufficient investigation . . . to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10.[11]

As discussed above, Class Plaintiffs were well informed about the strengths and weaknesses of their case.  Lowey conducted extensive factual and legal research and consulted experts to assess the merits of Class Plaintiffs' claims. *See* Briganti Decl., ¶ 9.  Lowey reviewed available information relating to the government investigation of JPMorgan's conduct. *Id.* ¶¶ 9, 17-18, 20. Moreover, Lowey conducted extensive research into the markets for Precious Metals Futures and Options on Precious Metals Futures to understand how Defendants' conduct affected those markets and how Class Plaintiffs and the Class were harmed. Lowey also worked closely with experts in this field to better understand the mechanics and scope of JPMorgan's conduct and to evaluate the damages that Defendants' conduct caused the Class. *Id.* ¶¶ 9, 21.

---

[11] *See also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating that "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *In re Sinus Buster Products Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (finding that the litigants had "conducted meaningful pre-trial discovery," which included "an 'extensive' investigation" prior to filing the consolidated class complaint); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) (stating that "'[t]he overriding theme of our caselaw is that formal discovery is not necessary'" so long as the class is not prejudiced and there is a factual basis for the settlement); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (stating that "formal discovery was [not] a necessary ticket to the bargaining table").

Class Plaintiffs also received Mediation Information that assisted in evaluating the merits of the action and proposed Settlement.  *Id.* ¶ 17.  First, Class Plaintiffs received all of JPMorgan's relevant transaction data, including data for all of JPMorgan's orders and trades in Precious Metals Futures. *Id.* ¶ 17.  This allowed Class Plaintiffs, working with industry experts, to arrive at an independent estimate of damages—separate from the damages described in the DPA and independent of JPMorgan's own damages calculations. Then, after a settlement in principle was reached, Class Plaintiffs received additional Mediation Information, which included more than 170,000 documents from the relevant custodians at JPMorgan. *Id.* ¶ 20.  Class Plaintiffs conducted a thorough review of these documents to confirm the reasonableness of the Settlement. *Id.*  Class Plaintiffs also had the benefit of JPMorgan's admissions of the DOJ's findings in the DPA. Knowledge from government settlements, like the DPA, adequately informed class counsel of the reasonableness of settlement. *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010).

Accordingly, Lead Counsel's well-informed views of the strength of claims and likely defenses weigh in favor of preliminary approval.

### c.   <u>The ability of JPMorgan to withstand greater judgment</u>.

JPMorgan can withstand a judgment greater than $60,000,000, but this factor alone does affect the Settlement's reasonableness.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 439, 460 (S.D.N.Y. 2004) (a defendant's ability to "pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"); *In re Tronox Inc.*, No. 14-cv-5495 (KBF), 2014 WL 5825308, at *6 (S.D.N.Y. Nov. 10, 2014).  Moreover, JPMorgan's payment is in addition to regulatory penalties JPMorgan paid relating to the same conduct, including amounts out of which numerous Settlement Class Members may separately claim.

## II.      THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS

The proposed Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3). *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012). Accordingly, the Court should conditionally certify the Settlement Class as to the claims against JPMorgan.

### A.      The Settlement Class Meets the Rule 23(a) Requirements

#### 1.   Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." FED. R. CIV. P. 23(a). "Sufficient numerosity can be presumed at a level of forty members or more." *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("*IPO*"). There are at least 11,000 geographically dispersed Persons within the Settlement Class definition. *See* Briganti Decl., ¶ 29. Joinder of all these Persons would be impracticable.

#### 2.   Commonality

Commonality only requires the presence of a single common question of law or fact capable of class-wide proof. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); FED. R. CIV. P. 23(a)(2). Class Plaintiffs allege that JPMorgan's spoofing altered the perception of supply and demand and manipulated the prices of Precious Metals Futures and Options on Precious Metals Futures. The question of this distortion is common to all Class Members. *See In re Nat. Gas Commodities Litig.*, 231 F.R.D. 171, 180–81 (S.D.N.Y. 2005) (commonality satisfied where class members' claims "arise from a common course of conduct by the Defendants" and the same discovery and analysis will be necessary "to establish the factual basis for each of the elements of a manipulation claim under the CEA."). This case involves additional legal and factual issues common to Class Members, including but not limited to: (1) whether JPMorgan's conduct violated the CEA; (2) the operative time periods of JPMorgan's alleged violations; and (3) the appropriate measure of Class damages. As a result, Rule 23(a)(2) is satisfied.

### 3.  Typicality

Typicality under Rule 23(a)(3) requires that "each class member's claim arises from the same course of events[,] and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Here, Class Plaintiffs' and Class Members' claims all arise from JPMorgan's alleged manipulation of the market for Precious Metals Futures and the prices of Precious Metals Futures transactions. This alleged manipulation similarly impacts Class Plaintiffs and the Settlement Class by skewing the pricing of Precious Metals Futures.  *See In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 379 (S.D.N.Y. 2010) (finding typicality where plaintiffs and the class "transacted in the same contracts, in the same centralized marketplace, [and] were allegedly negatively impacted by the same common course of manipulative conduct for which the same group of defendants is alleged to be legally responsible for the damages"); *Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1011 (N.D. Ill. 2020) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.").  The asserted injuries of Settlement Class Members arise from JPMorgan's and the Individual Defendants' common course of manipulative conduct in connection with Precious Metals Futures contracts.  Thus, Rule 23(a)(3) is satisfied.

### 4.  Adequacy

As discussed in Argument I.B.1. above, there are no conflicts between Class Plaintiffs and Class Members, and Class Plaintiffs' interest in proving liability and damages wholly aligns with the Settlement Class' interest. Lead Counsel are highly experienced in complex class action litigation, including cases involving complicated CEA claims. Accordingly, the requirements of both Rule 23(a)(4) and Rule 23(g) are satisfied.

### B.        The Class May Be Certified Under Rule 23(b)(3)

Rule 23(b)(3) certification is proper where  the action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010). To satisfy Rule 23(b)(3), Class Plaintiffs must conditionally establish: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

#### 1.  Predominance

"If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (JG)(VVP), 2014 WL 7882100, at *35 (E.D.N.Y. Oct. 15, 2014), *adopted,* 2015 WL 5093503 (E.D.N.Y. July 10, 2015).  In CEA manipulation cases such as this one, courts consistently find that common issues of the existence and scope of the alleged manipulation predominate over individual issues. *See In re Nat. Gas Commodities Litig.*, 231 F.R.D. at 180 (predominance satisfied in CEA action); *Ploss*, 431 F. Supp. 3d at 1014 ("Courts have found that common questions do predominate over individual questions in cases alleging price manipulation under the [CEA]").  This follows from the central nature of the manipulation. The same proof required to establish liability and demonstrate Class Plaintiffs' injury would also prove other Class Members' injury and damages. The timing, nature and impact of JPMorgan's alleged spoofing serve as that common nucleus of facts linking each Class Member's claim.  As a result, the predominance requirement is satisfied.

### 2. Superiority

Class Plaintiffs must also show that a class action is superior to individual actions.[12]  Here, any Class Member's interest in individually controlling the prosecution of a separate claim is likely low given that the cost of litigating a claim individually would likely exceed the potential individual recovery.[13]  Furthermore, thousands of individuals and entities traded Precious Metals Futures during the Class Period; settling these claims in the context of a class action conserves both judicial and private resources and hastens Class Members' recovery.

As to whether any existing litigation impacts the superiority of this litigation, Defendants were subject to government prosecutions and settlements that involved, at least in part, the factual predicate of this Action.  *See, e.g.*, Briganti Decl. ¶¶ 12-15.  While some Class Members may be eligible to receive proceeds from the VCPA, it is unclear whether all Class Members may be eligible to recover.   Further, the Settlement here offers a significant enhancement to Class Members, providing recovery for those who might not be eligible to receive money from the government settlements, and increasing the total damages recovered for the Class.

## III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR

Due process and Rule 23 require that the Class receive adequate notice of the Settlement. *Wal-Mart Stores*, 396 F.3d at 114. To be adequate, the method(s) used to issue notice must be reasonable. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983); *Weigner v. City of New*

---

[12] Superiority considers: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3).

[13] *In re Amaranth*, 269 F.R.D. at 386 ("Claimants likely have no interest in pursuing their own claims, which may be prohibitively small."); *accord Kohen v. Pacific Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 481 (N.D. Ill. 2007) (finding superiority was satisfied in CEA case where individual claims would likely "cost more to prosecute than may be recovered in damages").

*York*, 852 F.2d 646, 649 (2d Cir. 1988) (due process only requires that counsel "acted reasonably in selecting means likely to inform persons affected").

The proposed Class Notice plan and related forms of notice (*see* Briganti Decl. Exs. 2-4) are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The direct-mailing notice component of the notice program will involve sending the mailed notice (Briganti Decl. Ex. 3) and the Proof of Claim and Release form (*id*. Ex. 5) via First-Class Mail, postage prepaid to potential Class Members. *See id.* Ex. 2 (Declaration of Linda V. Young). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane*, 339 U.S. at 319. The Settlement Administrator also will publish the publication notice in various periodicals, in industry publications, and through a digital campaign on websites. *See* Briganti Decl. Ex. 4. Any Class Members that do not receive the Class Notice via direct mail likely will receive the Class Notice through the foregoing publications or word of mouth. The Settlement Website, www.preciousmetalsfuturesclassactionsettlement.com, will serve as an information source regarding the Settlement. Class Members can review and obtain: (i) a blank Proof of Claim and Release form for the Settlement; (ii) the mailed and publication notices; (iii) the proposed Distribution Plan; (iv) the Settlement Agreement with JPMorgan; and (v) key pleadings and Court orders. The Settlement Administrator will also operate a toll-free telephone number to answer Class Members' questions and facilitate claims filing.

Lead Counsel recommends that A.B. Data, Ltd. ("A.B. Data") be appointed as Settlement Administrator. A.B. Data developed the Class Notice plan in coordination with Lead Counsel and

has experience in administering class action settlements involving securities in over-the-counter and exchange markets, including in complex cases involving futures and options.[14]

## IV.    THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT

Lead Counsel have designated Citibank, N.A. ("Citibank") to serve as Escrow Agent, to which JPMorgan has consented.  Citibank has served as escrow agent in a number of settlements, including *Boutchard v. Gandhi et al.*, No. 18-cv-7041 (N.D. Ill.); *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y), and *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 15-cv-5844 (GBD).  Citibank has agreed to provide its services at market rates.

## V.    PROPOSED SCHEDULE OF EVENTS

In Appendix A, Class Plaintiffs propose a schedule for issuance of Class Notice, objection and opt-out opportunities for Settlement Class Members, and Class Plaintiffs' motions for final approval, attorneys' fees, expense reimbursements, and Incentive Awards.  If the Court agrees, Plaintiffs request that the Court schedule the Fairness Hearing for a date one hundred fifty (150) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the Fairness Hearing.  The remaining dates will be determined by the date the Preliminary Approval Order is entered and the Fairness Hearing date.

## CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of Settlement Agreement with JPMorgan and enter the accompanying Preliminary Approval Order.

---

[14] *See, e.g.*, *In re Silver Fixing Antitrust Litig.*, Nos. 14-md-02573 (VEC), 14-mc-02573 (VEC) (S.D.N.Y.); *Boutchard v. Gandhi et al.*, No. 18-cv-7041 (N.D. Ill.); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB); *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600 (S.D.N.Y.).

Dated: November 19, 2021
White Plains, New York

**LOWEY DANNENBERG, P.C.**

_____/s/ Vincent Briganti_____
Vincent Briganti
Raymond P. Girnys
Christian Levis
44 South Broadway
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
E-mail: vbriganti@lowey.com
E-mail: rgirnys@lowey.com
E-mail: clevis@lowey.com

_Lead Counsel for Class Plaintiffs_

**GIRARD SHARP LLP**
Daniel C. Girard
Jordan Elias
601 California Street, Suite 1400
San Francisco, CA 94108
Tel.: 415-981-4800
E-mail: dgirard@girardsharp.com
E-mail: jelias@girardsharp.org

**NUSSBAUM LAW GROUP, P.C.**
Linda P. Nussbaum
1211 Avenue of the Americas
New York, NY 10036
Tel.: 917-438-9102
E-mail: lnussbaum@nussbaumpc.com

**SCOTT+SCOTT ATTORNEYS
AT LAW LLP**
Deborah Clark-Weintraub
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: 212-223-6444
E-mail: dweintraub@scott-scott.com

**HAUSFELD LLP**
Timothy S. Kearns
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel.: 202-540-7200
E-mail: tkearns@hausfeld.com

**ROBINS KAPLAN LLP**
Kellie C. Lerner
David Rochelson
399 Park Avenue, Suite 3600
New York, NY 10022
Tel.: 212-980-7400
E-mail: KLerner@RobinsKaplan.com
E-mail: DRochelson@RobinsKaplan.com

**WEISSLAW LLP**
Mark David Smilow
1500 Broadway, Suite 1601
New York, NY 10036
Tel.: 212-682-3025
E-mail: msmilow@weisslawllp.com

_Additional Plaintiffs' Counsel_

26

**APPENDIX A**

| PROPOSED SCHEDULE OF SETTLEMENT EVENTS | |
|---|---|
| **Event** | **Timing** |
| Deadline to begin mailing of Class Notice to Class Members and post the Notice and Claim Form on the Settlement Website (the "Notice Date") (Preliminary Approval Order ("PAO") (PAO ¶ 12) | 45 days after entry of the Preliminary Approval Order |
| Complete initial distribution of mailed notices | 60 days after the Notice Date |
| Deadline for Class Plaintiffs to file papers in support of final approval and application for fees and expenses (PAO ¶ 34) | 60 days prior to the Fairness Hearing |
| Deadline for requesting exclusion and submitting objections (PAO ¶¶ 18, 22) | 45 days prior to the Fairness Hearing |
| Deadline for filing reply papers (PAO ¶ 34) | 5 days prior to the Fairness Hearing |
| Fairness Hearing | 150 days after the Notice Date |
| Deadline for submitting Claim Forms (PAO ¶ 28) | 30 days after the Fairness Hearing |